SEXTON, Judge.
After his home was damaged by fire, plaintiff, W.P. Sevier,[1] instituted this action to recover certain proceeds from a homeowner’s policy containing the statutorily provided fire requirements. During the course of this litigation, defendant filed |certain exceptions, including an exception ¡¡of prematurity, alleging that plaintiff had not complied with the requirements of the insurance policy prior to institution of this suit. The exception was overruled after a hearing. The defendant applied to this court for issuance of a stay order and supervisory writs to examine the propriety of the trial court’s refusal to maintain the exception, and on the basis of that application, the stay order and supervisory writs were granted. Having found merit in relator’s argument, we hereby make the previously granted writ of certiorari peremptory-
The following chronology of events is pertinent to this discussion. On February 11,1984, a partial fire loss was sustained at the residence of W.P. Sevier in Madison Parish, Louisiana. At the time of the loss, defendant, United States Fidelity & Guaranty Company (hereinafter referred to as USF & G), provided fire and extended insurance coverage to W.P. Sevier and his wife, Martha Sevier.
This claim was referred to defendant, GAB Business Services, Inc. (hereinafter referred to as GAB) by USF & G for adjustment on February 13, 1984. Defendant, F.A. Wiegmann, an employee of GAB, was designated as adjuster of this fire loss claim. Weigmann inspected the premises on February 13, 1984 and prepared “a scope of repairs,” an itemization of the nature and type of material and labor required to refurbish the damaged property. On that day, Wiegmann agreed to accept an estimate for the repairs to the dwelling from Humble Construction Company of Monroe. Humble estimated the cost of repair to be $89,569.59. The date that Wieg-mann received the estimate from Humble is in dispute. Plaintiffs claim that the estimate was received on or about February 23, while defendants claim it was on or about February 28,1984. Additionally, Wi-egmann gave Humble clearance to begin cleanup operations on the site, which began the week of February 13, 1984. Actual reconstruction, however, did not begin at that time, due to the fact that Wiegmann and Humble disagreed as to the extent and cost of the repairs.
Wiegmann also sought an estimate of repairs and replacement from the Traxler Construction Company which provided an estimate on March 12, 1984 in the amount of $59,000. This estimate was forwarded to plaintiffs through their attorney.
*134 On March 23, 1984, Wiegmann received a demand from plaintiffs’ attorney for settlement of the fire loss claim for damage to the dwelling for the full sum of $88,167.10.
On April 23, 1984, Wiegmann received a second demand from counsel for plaintiffs. This correspondence contained an additional estimate of repairs completed by Cupit Construction Company for $88,716.00. Wi-egmann consulted with his principals, and it was determined that, due to the large difference between the estimates of repairs submitted by Humble and Cupit and the estimate submitted by Traxler Construction, the appraisal provisions of the insurance contract would be invoked. Demand for appraisal was forwarded to plaintiffs by defendants on April 25, 1984. Defendants were informed May 1, 1984 of plaintiffs’ refusal to comply with the provisions of the insurance policy regarding appraisal.
Suit was filed June 14, 1984, against USF & G, GAB and F.A. Weigmann, seeking the recovery of the cost of repairs to the structure plus penalties, attorney’s fees, interest from date of judicial demand and other damages. Defendants thereafter filed the exception of prematurity which is the subject of this writ application. Parenthetically, we note that reconstruction of the Sevier residence had been completed at the time this matter was heard by the trial court.
After a hearing on the exception of prematurity, a judgment was rendered denying that exception.
The merits of relator’s claim that the exception of prematurity was improvidently overruled hinges on whether or not plaintiffs fulfilled the requirements of this policy prior to institution of this action.
a. “Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.”
b. “When loss payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.”
c.“Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.”
The terms and conditions of the instant insurance policy track the language of LSA-R.S. 22:691, which provides the statutory requirements for fire insurance policies.
Respondents claim that the policy requirements were fulfilled as the request for appraisal was untimely since it was made more than sixty days after February 23, 1984, the date which respondents claim that “proof of loss” was submitted in the form of Humble’s estimate. Relator argues in opposition that a formal proof of *135 loss has never been filed with USF & G and further argues that if the Humble bid is construed to be a “proof of loss,” it was not received by USF & G until February 28, 1984, making the April 25,1984 request for appraisal timely.
Before a discussion of the relative merits of relators and respondents positions is appropriate, we must note and address a broader legal issue which is squarely presented within the context of these facts, i.e., whether the appraisal clause of fire insurance policies mirroring LSA-R.S. 22:691 are enforceable.
In Doucet v. Dental Health Plans Management Corporation, 412 So.2d 1383 (La.1982), the Louisiana Supreme Court noted that the classification of a contract as an insurance contract renders the arbitration provisions of that contract unenforceable under LSA-R.S. 22:629 which provides in pertinent part:
§ 629. Limiting actions; jurisdiction
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
[[Image here]]
(2) Depriving the courts of this state of the jurisdiction of action against the insurer....
This pronouncement in Doucet is dicta however, because the contract construed therein was found not to be an insurance contract and the pertinent arbitration provision was given effect. Nevertheless, the Supreme Court in Doucet cited with approval the Fourth Circuit decision of Macaluso v. Watson, 171 So.2d 755 (La.App. 4th Cir.1965), appeal after remand, 188 So.2d 178 (La.App. 4th Cir.1966), which struck down a mandatory arbitration provision contained in an uninsured motorist coverage provision of an automobile insurance policy. Later, in Girard v. Atlantic Mutual Insurance Company, 198 So.2d 444 (La. App. 4th Cir.1967), the Fourth Circuit distinguished Macaluso v. Watson, when construing the appraisal provision of the statutorily provided fire insurance policy. The court reasoned that the stipulation providing for an appraisal was not a true arbitration provision which divested the court of jurisdiction, as the appraisal was still subject to the scrutiny of the court. After an extensive discussion of the jurisprudence relative to the distinctions between arbitration and appraisal provisions, the Fourth Circuit noted that the Supreme Court has specifically held that stipulations for appraisals are valid, but that the estimation is not binding on the parties in the event that the appraisers and umpire fail to discharge their duty of ascertaining the “actual cash value and loss,” and in that instance, the appraisal would be subject to scrutiny by the court. Thus, the Fourth Circuit concluded that the appraisal provisions worked no divestiture of a court’s jurisdiction.
However, the semantical distinction between arbitration and appraisal was rejected in Alexander v. General Accident Fire & Life Assurance Corporation, Ltd., 268 So.2d 285 (La.App. 2d Cir.1972). In Alexander, this court construed the appraisal clause of a comprehensive coverage provision of an automobile insurance policy subsequent to a flood loss. In interpreting policy language very similar to that at issue in the instant case, the court found that the appraisal clause containing the mandatory word “shall” throughout, was violative of the provisions of LSA-R.S. 22:629 in that it had the effect of a divestiture of jurisdiction. The court stated:
LSA-R.S. 22:629 specifically proscribes any insurance provision which would have the effect of depriving the courts of this State of jurisdiction in an action against an insurer. The declaration in the insurance policy that “The appraisers shall state separately the actual cash value and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss” can only mean that the prerogative of *136 determining the amount of loss is conferred upon the appraisers and the umpire. Applying such an interpretation would effectively strip the court of jurisdiction to determine the issue of extent of loss. Thus, the policy provision is clearly inimical to the laws of this State and as such is null and void. If the clause is not accorded the abovestated purpose, it is without meaning or purpose and, as such, would add nothing to the policy.
In discussing Girard, the court in Alexander discounted the jurisprudence upon which Girard was based because it occurred prior to the enactment of LSA-R.S. 22:629 and stated that:
To the extent that the case may be said to approve mandatory appraisal clauses such as the one contained in the policy before this court, we respectfully disagree with the decision in Girard.”
We have examined the underlying rationale of both Girard and Alexander and conclude that the correct approach is that espoused by Girard. We agree that mandatory arbitration vests the arbitor with the decision making power. However, appraisal, by definition, enables the court to inquire into the circumstances surrounding the appraisal. As stated in Girard, the failure of the appraisers to assess the full extent of the loss renders the award unen-forcible. Thus, the appraisal provision herein does no violence to a litigant’s right to test the appraiser’s award, and consequently does not contravene LSA-R.S. 22:629 by divesting the courts of jurisdiction.
We are buttressed in our analysis by the fact that LSA-R.S. 22:691, which provides the statutory requirements for fire insurance policies, and LSA-R.S. 22:629 were enacted in the same legislative act, Act No. 195 of 1948, and were reenacted substantially without change in the same legislative act in 1958, Act No. 125.
In our civilian jurisdiction, we are codally constrained to read laws upon the same subject matter with reference to each other. LSa-C.C. Art. 17. Additionally, it is well established that courts should construe statutes to give them the meaning intended by the legislature and avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La.App. 2d Cir.1984), writ denied, 452 So.2d 175 (La.1984). Further, a statute is to be interpreted so that no clause, sentence or word therein is deemed superfluous or meaningless. Washington Parish Police Jury v. Washington Parish Hospital Service, District #1, 152 So.2d 862 (La.App. 1st Cir.1963), writ denied, 244 La. 669, 153 So.2d 883 (1963).
Guided by these principles, we must conclude that the legislature, in providing the mandatory provisions for fire insurance policies, did not include a provision which was invalidated by the provisions of an earlier section of the same legislative act. To the extent that Alexander can be said to be authority that the appraisal clause of the statutorily provided fire insurance provisions are unenforceable in contravention of LSA-R.S. 22:629, it is overruled.
Having concluded that the appraisal provision of the instant contract was enforceable, we progress to the merits of relator’s claim.
The instant policy provides as follows with respect to a proof of loss:
Requirements in case loss occurs.
The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash *137 value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, as such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.
The only arguable “proof of loss” submitted in this case which would make the April 25, 1984 demand for appraisal untimely, is the Humble estimate which was submitted either February 23 or 28, 1984. Moreover, the initial Humble bid estimate would allow plaintiff to prevail only if the evidence reveals that the bid was submitted on or before February 25, 1984.
Weigman testified that he received the estimate about February 28, 1984. This evidence was not controverted. Plaintiff did introduce a typed estimate from Humble Construction dated February 23, 1984 which the trial court found to be a later version of the initial estimate submitted to Weigman. However, the date on this estimate does not refute the testimony as to when the bid was received by Weigman. At the hearing on the exception when counsel for USF & G sought to introduce the handwritten estimate into evidence, counsel for plaintiff stated:
Judge, for purposes of this hearing, I would not object. I know that this is the work product Mr. Humble initially gave, although I know that the, there was a subsequent typewritten estimate given. And I would, I would not object that, that this was what Mr. Humble gave this man. I know that, but I would want the Court to be aware of the fact that this is not a final estimate by any means and is subject — even some items here have been changed. (Emphasis supplied.)
In this statement, counsel places emphasis on the fact that the typewritten estimate was subsequent to the handwritten one, and that the handwritten estimate was not a complete estimate. Clearly, this estimate cannot be construed to be a proof of loss which apprised USF & G of the full extent of the structual damage incurred.
Since we find that satisfactory proof of loss was not submitted prior to February 28, 1984, a discussion of whether a satisfactory proof of loss was submitted in this instance may be pretermitted. For the purposes of this writ application, satisfactory proof of loss was not submitted prior to February 28,1984, and consequently, USF & G’s request for appraisal which occurred on April 25, 1984 was timely.
Having concluded thusly, plaintiff did not fulfill the requirements of the policy prior to institution of suit, as required by subsection a of the policy as quoted above. The penalty for premature action under a fire insurance contract is dismissal. Girard, supra; Makofsky v. Indiana Lumbermans Mutual Insurance Company, 194 So.2d 442 (La.App. 4th Cir.1967).[2]
*138 Accordingly, the writ previously issued herein is made peremptory and the exception of prematurity is maintained. The cause is dismissed without prejudice at plaintiff’s cost.
JASPER E. JONES, J., dissents with written reasons.

. The original plaintiffs were W.P. Sevier and the heirs of Martha Sevier, the deceased wife of plaintiff W.P. Sevier, namely, Richard Putnam Sevier, Sherill Sevier Pirone and Dorothy Sevier Elliott. Mrs. Sevier was a named insured under the policy, but died prior to the fire. Subsequent to the granting of this writ, plaintiff, W.P. Sevier died and his heirs have been substituted in these proceedings.

. Although we conclude that the exception of prematurity should have been sustained, we note that a strong argument can be made that the insurer herein owed at least $59,000 from the date of the estimate by their contractor, Traxler, and would be subject to penalties and attorney’s fees from that point.. See Riverland Oil Mill v. Underwriters for Lloyd's, 368 So.2d *138 156 (La.App. 2d Cir.1979), and the cases discussed therein. This, however, is a question which must be resolved on the merits of this claim should it eventually be tried.