497 So.2d 1380 (1986)
W.P. SEVIER, et al.
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, GAB Business Services, Incorporated, and F.A. Wiegmann, Individually.
No. 86-C-0801.
Supreme Court of Louisiana.
November 24, 1986.
James D. Caldwell, Tallulah, for applicants.
Brian Crawford, Theus, Grisham, Davis & Leigh, Monroe, for respondents.
CALOGERO, Justice [*]
This lawsuit is primarily over the proceeds of the fire portion of a homeowner's policy which was issued by defendant United States Fidelity & Guaranty Co. (USF & G) to W.P. Sevier.[1] Defendants filed exceptions of no right of action, lack of procedural capacity, and prematurity. The trial court dismissed the exceptions. The court of appeal granted defendants' application for a supervisory writ, then rendered an opinion maintaining the exception of prematurity and dismissing the plaintiffs' suit without prejudice.[2] We reverse.
*1381 On February 11, 1984, a fire damaged W.P. Sevier's home. Mr. Sevier notified his homeowner's insurer, USF & G, which in turn referred the matter to an adjusting firm, GAB Business Services, Inc. (GAB). The adjuster, F.A. Wiegmann, inspected the damage on February 13, 1984. He prepared what he termed a "scope of repairs," an itemized list of the material and labor needed for repairs. Floyd Humble, a contractor who had previously done work on the Sevier home, was also present, having been contacted by Sevier. Wiegmann was introduced to Humble by Sevier. Wiegmann authorized Humble to begin cleaning up, which Humble commenced that week. Wiegmann also asked Humble to submit an estimate for the cost of repairs.
After receiving Humble's estimate for $89,569.59, Wiegmann asked Traxler Construction Co. to submit a bid. On March 12, 1984, Traxler gave its bid of $59,000 to Wiegmann, who forwarded a copy to plaintiffs' attorney. Thereafter, plaintiffs' attorney, by letter dated March 23, 1984, demanded the amount of Humble's estimate in settlement of the claim. One month later, he sent a bid of $88,716 from Cupit Construction Company to Wiegmann. By letter dated April 25, 1984, GAB notified plaintiffs' attorney that USF & G demanded an appraisal. The plaintiffs refused to participate in the appraisal procedure, demanded settlement of the claim, and filed this lawsuit. Defendants filed several exceptions, including the exception of prematurity. They based the exception of prematurity on the plaintiffs' alleged failure to submit to an appraisal procedure set forth in the policy and demanded by the insurer.[3] That appraisal procedure was as follows:
Appraisal.
In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.
When Loss Payable.
The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.
Suit.
No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.
The trial court found that USF & G had waived its right to demand an appraisal because of its use of dilatory tactics, citing Talbert v. Northwestern National Insurance *1382 Co., 167 La. 608, 120 So. 24 (1929). On appeal, the court of appeal first considered whether the appraisal clause was enforceable. It examined the cases which have held that a mandatory arbitration clause violates La.Rev.Stat.Ann. § 22:629 (West 1978 & Supp.1986).[4]Sevier v. USF & G, 485 So.2d 132, 135 (La.App. 2d Cir. 1986). It then examined the conflicting cases in the courts of appeal on whether the appraisal clause also violates La.Rev. Stat.Ann. § 22:629. Id. at 135-36 (citing Alexander v. General Fire & Life Assurance Corp., 268 So.2d 285 (La.App. 2d Cir. 1972) and Girard v. Atlantic Mutual Insurance Co., 198 So.2d 444 (La.App. 4th Cir.1967)). The court of appeal (Second Circuit) overruled its own prior decision in Alexander and adopted the Fourth Circuit's holding in Girard that the appraisal clause is enforceable. 485 So.2d at 136.
The court of appeal then considered the plaintiffs' argument that the appraisal procedure set out in the policy was not invoked timely because the insurance company's demand was not made within the requisite sixty days. It found that the plaintiffs did not submit a satisfactory proof of loss to the insurance company until February 28, 1984, at the earliest, and that, therefore, the insurance company's appraisal demand on April 25, 1984, was within sixty days and thus timely. The trial court's dismissal of the exception of prematurity was therefore reversed by the court of appeal for the reason that plaintiffs had not fulfilled the requirements of the policy before filing suit. Id. at 137.
A suit is premature if it is brought before the right to enforce it has accrued. La.Code Civ.Proc.Ann. art. 423 (West 1960). Prematurity is determined by the facts existing at the time suit is filed. Fairfield Development Co. v. Jackson, 438 So.2d 664, 669 (La.App. 2d Cir.1983) (citing Weldon v. Republic Bank, 414 So.2d 1361 (La. App. 2d Cir.1982)). The exception of prematurity is a dilatory exception on which evidence may be introduced. La.Code Civ. Proc.Ann. arts. 926, 930 (West 1984). Thus, we must consider the testimony and documentary evidence presented at the hearing to decide whether a satisfactory proof of loss was submitted to the insurance company on or before February 24, 1984, which would make the April 25, 1984, USF & G demand for appraisal untimely,[5] as alleged by plaintiffs, or whether it was presented originally on or after February 25, 1984, in which event the April 25, 1984, demand would be timely.
No formal proof of loss was submitted in this case. However, the plaintiffs contend, and we determine hereinafter in this opinion, that the handwritten estimate by the contractor, Floyd Humble, constitutes an adequate proof of loss. Thus, the significant fact becomes whether defendant received Humble's handwritten estimate before February 25, 1984. There was conflicting evidence as to the date on which this handwritten estimate was submitted. The court of appeal relied on the adjuster's testimony that he received the handwritten estimate about February 28, 1984, and emphasized that there was no contrary direct testimony. There was, nonetheless, contrary evidence, which will be discussed below.
Furthermore, the trial judge discounted entirely the testimony of the adjuster. He "was not impressed with Mr. Wiegmann's ability to recall dates in this matter, particularly wherein those dates may or may not have affected liability of USF & G." He simply did not believe Mr. Wiegmann's testimony that he did not receive the handwritten estimate until about February 28th. "It is the task of the trial judge to determine the credibility of the witnesses and *1383 this determination will not be disturbed absent manifest error." Boustany v. Fluid Dynamics, Inc., 392 So.2d 750, 751 (La.App. 3d Cir.1980) (citing Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973)). It is true that the trial judge had no evidence before him of the date of receipt by Wiegmann of the typewritten Humble estimate. He did, however, have evidence to support his conclusion that, as a matter of fact, Wiegmann received Humble's handwritten estimate on or before February 23, 1984, contrary to Wiegmann's testimony that that estimate was received on February 28th.
The trial judge concluded, from the evidence before him, that: the first communication between Wiegmann and Humble took place on February 13, 1984, when they were introduced to each other by Sevier at the Sevier home; Humble was permitted to begin cleaning up; on or shortly after February 13th, Humble prepared an undated, handwritten, comprehensive estimate for $89,569.59, based on Wiegmann's "scope of repairs"; Humble gave the estimate to Wiegmann after February 13, 1984, but on or before February 23rd for on February 23rd, the contractor converted the handwritten estimate to a typewritten one, practically identical, addressed to Mr. Sevier.
The judge's primary support for this sequence of events is that the adjuster had in his possession the handwritten estimate. In fact, defendants introduced it into evidence at trial. No doubt, it was prepared before the typed estimate, which was dated February 23, 1984. The trial judge concluded that even if the adjuster did not receive the February 23rd typewritten estimate on February 23rd (the adjuster so testified), he had received, between February 13th and February 23rd, the handwritten estimate (converted to typewritten form on February 23, 1984, by Humble), which defendants produced from the adjuster's file.
In our view, the record supports the findings of the trial judge. The fact finder's reasonable evaluations of credibility and inferences of fact must be accepted on review, even if other evaluations and inferences are reasonable. Pierre v. Landry, 341 So.2d 891, 893 (La.1977); Bray v. Isbell, 458 So.2d 594, 596 (La.App. 3d Cir. 1984), writ denied, 462 So.2d 210 (La.1985). The appeal court was not entitled to substitute its evaluations of credibility and inferences of fact for those of the trial court. The trial court's finding that defendant received the handwritten estimate on or prior to February 23, 1984, was not only not manifestly erroneous, but correct.
Defendants also contend that, even if the handwritten estimate was submitted on or before February 24th, it does not constitute a satisfactory proof of loss, as required by the policy.
The jurisprudence under La.Rev.Stat. Ann. § 22:691 does not shed any light on whether the language in the statutorily sanctioned (La.Rev.Stat.Ann. § 22:691(F)) standard fire policy, "proof of loss, signed and sworn to by the insured," is imperative, insofar as the form of a proof of loss is concerned. However, there are numerous cases which discuss what comprises a satisfactory proof of loss for purposes of La.Rev.Stat.Ann. § 22:658 (West 1978 & Supp.1986). Section 658 compels all insurers, except relative to life insurance policies and health and accident policies, (which, of course, includes fire insurers) to pay claims within sixty days after receipt of "satisfactory proofs of loss" under penalty, if arbitrary, capricious, or without probable cause, of 12% damages and reasonable attorney's fees. Included in the cases under section 658 are several involving homeowners' suits for the proceeds of a fire insurance policy, similar to the case at bar. Deville v. Louisiana Farm Bureau Mutual Insurance Co., 378 So.2d 457 (La.App. 3d Cir.1979); Paul v. National American Insurance Co., 361 So.2d 1281 (La.App. 1st Cir.), writ denied, 363 So.2d 1385 (La.1978); Sensat v. State Farm Fire and Casualty Co., 176 So.2d 804 (La.App. 3d Cir.), writ denied, 248 La. 419, 179 So.2d 17 (1965). And they arose after the enactment of sections *1384 658 and 691.[6] In none of the cases was a formal proof of loss submitted, yet the courts, in connection with fire policy claims, applied the provisions of section 658. Deville, 378 So.2d at 460; Paul, 361 So.2d at 1284; Sensat, 176 So.2d at 807.
The cases under section 658 have demonstrated that "proof of loss" is a flexible requirement to advise the insurer of the facts of the claim. Austin v. Parker, 672 F.2d 508, 520 (5th Cir.1982); Spalitta v. Hartford Fire Insurance Co., 428 So.2d 824, 827 (La.App. 5th Cir.1983); Riverland Oil Mill, Inc. v. Underwriters for Lloyd's, New York, 368 So.2d 156, 163 (La.App. 2d Cir.), writ denied, 369 So.2d 1365 (La.1979). The proof of loss is not required to be in any formal style. Gatte v. Coal Operators Casualty Co., 225 So.2d 256, 258 (La.App. 3d Cir.1969), rev'd on other grounds, 256 La. 325, 236 So.2d 485 (1970) (citing Moore v. St. Paul Fire & Marine Insurance Co., 193 So.2d 882 (La.App. 3d Cir.1967)). As long as the insurer receives sufficient information to act on the claim, "the manner in which it obtains the information is immaterial." Austin v. Parker, 672 F.2d at 520.
We choose to adopt the views of the courts in Deville, 378 So.2d 457, Paul, 361 So.2d 1281, and Sensat, 176 So.2d 804 and the liberal rules concerning lack of formality relative to proof of loss set forth in the paragraph hereinabove, and thus find here that the handwritten Humble estimate given defendant's representative on behalf of Mr. Sevier constituted a satisfactory proof of loss. It gave USF & G adequate notice of the facts of the claim. And the trial judge's determination that submission of the estimate preceded February 25th was not manifestly erroneous. The insurer, which dispatched an adjuster to inspect the scene of the fire and make a report, obviously had notice. It knew the extent of required repairs, both from the contractor's estimate and from the adjuster's scope of repairs. It knew the amount that the insured's contractor would charge to perform the work. Plaintiffs' counsel's statement at the hearing on the exceptions that the handwritten estimate "was not a final estimate" was not an admission that the transmitted estimate did not constitute a proof of loss. It was, rather, an effort to reserve the right at trial on the merits to seek to recover more than the $89,569.59 if supportable, for "`the claimant is not conclusively bound [by the statements and declarations in the proof of loss] and may explain or contradict such declarations and statements, unless the facts are such as to create an estoppel against him.'" Telford v. New York Life Insurance Co., 227 La. 855, 865, 80 So.2d 711, 715 (1955) (quoting 45 C.J.S. Insurance § 991, at 1225 (1955)).
We conclude that the demand for appraisal by USF & G was not made within sixty days of receipt of a satisfactory proof of loss, and that plaintiff was therefore not required to submit to the demanded appraisal procedure. Thus his lawsuit was not premature. Consequently, the exception of prematurity was properly dismissed by the trial court. Because of this finding, we do not reach the issue of whether the appraisal clause violates the provisions of La.Rev.Stat.Ann. § 22:629(2).

Decree
For the foregoing reasons, the judgment of the court of appeal is reversed. The district court's dismissal of the exception of prematurity is reinstated. The case is remanded to the district court for further proceedings.
WATSON, J., concurs and assigns reasons.
*1385 WATSON, Justice, concurring.
The majority decides this case on a determination of a factual issue which, while possibly correct, is far from clear. It would be better to address the issue of whether the appraisal clause in the standard Afire policy violates the provisions of LSA-R.S. 22:629(A)(2) which states:
"A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement:
* * * * * *
"(2) Depriving the courts of this state of the jurisdiction of action against the insurer; or...."
The appraisal provisions call for the written demand of either party to select an appraiser. The appraisers then select an umpire (judicially selected if unable to agree) and submit their appraisals of loss, actual cash value and loss to each item, to each other. If the appraisers fail to reach agreement, their differences are submitted to the umpire. This provision uses mandatory language throughout signifying this is an extra step that must be taken before the failure to reach agreement between the insured and the insurance company can be heard by the court.
Appraisal and arbitration clauses both have the effect of divesting jurisdiction, even if only for a period of time, as with appraisal. Appraisal is similar enough to the negative effect of arbitration in divesting court jurisdiction to destroy any semantical distinction. For this reason, I would reverse the Second Circuit Court of Appeal's decision overruling Alexander v. General Accident Fire & Life Assurance Corporation, Ltd., 268 So.2d 285 (La.App. 2 Cir.1972), which found the appraisal clause of a comprehensive coverage provision of an automobile insurance policy to be violative of the provisions of LSA-R.S. 22:629(A)(2) and would find the appraisal clause in this case, which has similar language, to be void as a violation of this statute also.
Since I agree with the result, however, I respectfully concur.
NOTES
[*] Judge Lewis Doherty, Retired, Justice ad hoc, sitting for Justice Harry T. Lemmon.
[1] W.P. Sevier and his children, as heirs of the deceased Mrs. Sevier, filed this suit against the insurer, an adjusting firm and an adjuster. Mr. Sevier later died, and his children were substituted as plaintiffs in his stead.
[2] The exception of prematurity is a dilatory exception, La.Code Civ.Proc.Ann. art. 926 (West 1984), which merely retards the progress of the action but does not defeat the action. Id. art. 923. Consequently, a dismissal of a suit because of a defect urged in a dilatory exception is without prejudice. Alexander v. Town of Jeanerette, 371 So.2d 1245, 1248 (La.App. 3d Cir. 1979); Washington v. Flenniken Construction Co., 188 So.2d 486, 491 (La.App. 3d Cir.1966).
[3] La.Rev.Stat.Ann. § 22:691(F) (West 1978 & Supp.1986) sets forth the standard provisions for a fire insurance policy. The policy provisions in this case are identical to those in La. Rev.Stat.Ann. § 22:691(F).
[4] La.Rev.Stat.Ann. § 22:629(A)(2) provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement [d]epriving the courts of this state of the jurisdiction of action against the insurer."
[5] With twenty-nine days in February of 1984, defendant's letter of April 25, 1984, would have been on the sixtieth day and timely had plaintiffs' proof of loss been submitted on February 25, 1984.
[6] The source of section 691 is 1948 La.Acts, No. 195, § 15.01. It was amended and reenacted by 1958 La.Acts, No. 125. Minor amendments were made by 1960 La.Acts, No. 193, § 1, 1960 La.Acts, No. 194, § 1, 1977 La.Acts, No. 335, § 1 and 1985 La.Acts, No. 938, § 1.

The source of section 658 is 1948 La.Acts, No. 195, § 14:48 and 1952 La.Acts, No. 417, § 1. It was reenacted without change by 1958 La.Acts, No. 125. It was amended by 1985 La.Acts, No. 778, § 1.