523 So.2d 948 (1988)
Thomas B. LEMANN
v.
The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.
No. CA 8804.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Rehearing Denied May 11, 1988.
*949 Benj. R. Slater, Jr., Mark E. Van Horn, Monroe & Lemann, New Orleans, for plaintiff-appellant.
Raymond J. Salassi, Jr., Thomas K. Potter, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee.
Before BARRY, KLEES and PLOTKIN, JJ.
PLOTKIN, Judge.
The issue presented in this case is whether a group health care insurer can require the insured to disclose a medical diagnosis as a precondition to payment of insurance benefits.
Plaintiff, Thomas B. Lemann, insured through his employer, instituted this action against defendant, Mutual Life Insurance Company of New York, (MONY), to recover medical benefits under an insurance policy issued by the insurer and damages for breach of contract. The company defended on the ground that the claim was premature because the insured had not provided "due proof" of his expenses in the form of medical diagnoses; the plaintiff argued due proof was not defined in the policy and thus a diagnosis was not mandated by the contract as the only form of due proof. The trial court denied the plaintiff's motion for a summary judgment; the defendant's exceptions of prematurity and want of amicable demand and his motion for summary judgment were granted August 19, 1987. Plaintiff appeals.
The facts are undisputed. Plaintiff, insured by MONY policy G-21064, filed a claim for reimbursement of medical expenses covered up to 80% by his insurance policy. In July of 1984 Lemann submitted *950 to MONY medical bills and invoices and requested reimbursement but refused to complete the diagnosis section of the form. MONY paid part of the claim and refused to process the remainder until diagnoses were supplied.
La.R.S. 22:657 treats payments of insurance claims for health and accident policies. It provides:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases. (Emphasis added.)
The specific form of proof required by the terms of the policy at issue is unclear. The insurance policy provides the following medical expense benefits:
Upon receipt of due proof that an employee... necessarily incurred Eligible Medical Expense ... for the treatment of an accidental bodily injury or sickness while his insurance for this benefit was in force, MONY will pay the benefit specified below subject to the following provisions... of the Policy.
The policy lists among the covered charges:
1. Charges made by a hospital for medical care and treatment.
2. Charges made by a physician for diagnosis, treatment and surgery.
3. Charges made by a graduate registered nurse....
The pertinent limitations and exclusions are:
1. General Limitations: Eligible Medical Expenses shall be limited to: (a) services, supplies and treatment which are authorized by a physician and which in the geographical area where incurred are the customary and reasonable services, supplies or treatment provided for the condition being treated; (b) charges which are customary and reasonable for the services, supplies and treatment received in such geographical area; ....
2. Exclusions: Eligible Medical Expenses shall not include any of the following charges: ....
(d) Charges for health or check-up examinations other than those necessary for the treatment of a sickness, disease or bodily injury.
The policy delineates the procedure for filing a claim, "written proof of loss must be furnished to MONY," but it never expressly defines what constitutes the proof required.
The Louisiana Supreme Court has approved "liberal rules concerning lack of formalities relative to proof of loss" in the context of fire insurance in Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380 (La.1986). The insured in Sevier brought suit when the insurer failed to pay a claim under a homeowner's policy. The insurer had refused to pay because there had been no appraisal of the damage. Plaintiff claimed that the insurance company sent an adjuster who prepared a list of needed repairs. The trial court dismissed insurer's exception of prematurity; the court of appeal granted defendant's application for writs and maintained the exception. The Supreme Court reversed the appeal court, reasoning:
(t)he cases under section 658 have demonstrated that `proof of loss' is a flexible requirement to advise the insurer of the *951 facts of the claim..... The proof of loss is not required to be in any formal style..... As long as the insurer receives sufficient information to act on the claim, "the manner in which it obtains the information is immaterial." Austin v. Parker, 672 F.2d [508] at 520 [(5th Cir.1982)]. Sevier, 497 So.2d at 1384.
Under La.R.S. 22:657 the terms of an insurance policy control the form in which claims are submitted to the insurer, and the form of proof of claims according to Sevier is to be liberally interpreted. Because the policy at issue does not specifically require a diagnosis as due proof, we find that MONY must accept other forms of medical documentation as long as they are sufficient to describe the treatment of the insured's condition.
Social policy reasons exist to deny the insurer an absolute right to the insured's diagnosis. The U.S. Constitution Fourth Amendment protects individual privacy by protecting persons, places and possessions against indicriminate searches and seizures. The Fifth Amendment protects against self-incrimination. The U.S. Supreme Court classified zones of privacy in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). These rights of privacy were elevated to fundamental rights in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Finally, in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Court noted:
(t)he cases sometimes characterized as protecting `privacy' have in fact involved at least two different kinds of interests. One is the individualized interest in disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions. (Emphasis added). 429 U.S. at 598-599 [97 S.Ct. at 875-877].
The Court concluded its opinion with the following:
(a) final word about issues we have not decided. We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files.... The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures. 429 U.S. at 605 [97 S.Ct. at 879].
Louisiana has established, for reasons of public policy, certain communications which are privileged and excluded from evidence. Louisiana provides for a statutory physician-patient privilege in both civil (LSA-R.S. 13:3734) and criminal (LSA-R.S. 15:476) cases. Statements by a client to a psychologist are privileged (LSA-R.S. 37:2366), and the privilege extends to the psychologist's secretary, stenographer and clerk. The purpose of these privileges is to encourage a confidental relationship between the parties.
Disclosures of diagnoses to a health care insurer are not privileged. Personal medical information is stored in computer banks, and claim forms are routinely handled by clerks, administrators, and attorneys. All are accessable to many people who are not obligated to keep anything confidential. This lack of confidentiality violates the strong public policy of protecting privileged communication.
The right of privacy in today's society is compelling. Various diseases require full disclosure to physicians by patients for individual and public health treatment and regulation. Failure to encourage and protect the right of privacy through confidential privileged communication will result in nondisclosure and could create a public health threat. Requiring disclosure of a patient's diagnosis to a health care insurer will have a chilling effect on the patient's right and duty to communicate to his or her doctor and to receive treatment.
Health care insurers are not required under any statutory provision to protect confidential communications. They are immunized from liability if they dissiminate an insured's medical information. Therefore, without a legal privilege to protect the insured, the right to privacy outweighs the insurer's absolute right to receive a diagnosis in order to pay a medical claim.
*952 We next consider whether the information provided by the plaintiff was sufficient to serve as due proof of his claim. The insured must show that he was treated for accidental bodily injury or for sickness. The policy does not cover check-up examinations. The plaintiff submitted six medical bills for office visits; the charges ranged from $25.00 to $35.00 per visit. Three of the medical bills indicated the specific treatment givenstress EKG, urinalysis, cystocopy, and prostatic massage; the others listed only an office visit or an office visit with surgery. We find the medical bills as submitted do not give enough information for the insurance company to determine the condition for which the insurer was treated. Because of the nominal charges, the simple office visits and ordinary procedures, the insurer has no way of determining whether these are the uncovered routine office check-ups or whether they qualify as covered treatments.
Plaintiff attempted to offer MONY proof that his visits were not routine check-ups by having two of the doctors write letters to the insurer stating "treatment was necessary for a sickness, disease, or bodily injury; and that said treatment did not involve ... [a] check-up...." We find this statement inadequate to give insurer notice that the insured had eligible medical expenses. While the insured is not required to give the insurer a diagnosis, he must submit more descriptive information than was offered in these letters.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting.
The issue is whether a health insurer, which admits its policy does not define "due proof", can hold "open for final evaluations" the payment of six doctors' bills (total $388.80), three of which the majority notes are for specific treatment.
The insurer advised on November 16, 1984: "In order for us to be able to establish that the services received are customary and responsible for the condition being treated, the nature of the condition (medical diagnosis) must be identified by the attending physician." The trial court held the insured must reveal the nature (diagnosis) of the condition.
The majority states the issue is whether the insurer can require a medical diagnosis before making payment, then correctly notes "the specific form of proof required by the terms of the policy at issue is unclear", but illogically reasons "MONY must accept other forms of medical documentation" because "the right to privacy outweighs the insurer's absolute right to receive a diagnosis." The majority's dicta on social policy and the insured's right to privacy versus society's compelling concern over social diseases is unnecessary since the policy admittedly does not require a diagnosis.
Was the information submitted by the insured sufficient to overcome the insurer's exception of prematurity and motion for summary judgment? The applicable policy exclusion (2(d)) covers "charges for health or check-up examinations other than those necessary for the treatment of a sickness, disease or bodily injury." An "office visit" is not specifically excluded.
The insured's various bills, dated and on medical letterheads, specify a variety of services, including surgery, carbon dioxide, urinalysis, prostate treatment, a stress EKG and office visits. When the insurer rejected coverage, the insured submitted statements from the physicians specifying that the nature of the condition and the treatment was for a sickness, disease or bodily injury, i.e., in conformity with the policy.
The insured did all that he was required to do short of providing the demanded diagnosis which this panel unanimously agrees is not a mandate for coverage.
Maintaining the exceptions of prematurity and granting summary judgment was improper. There is certainly a genuine issue of material fact(s) left unresolved to *953 negate summary judgment. I would reverse the summary judgment and remand. The insured is entitled to further substantiate his claim.