# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-784

RICKY LEBOEUF AND KIMBERLY LEBOEUF

VERSUS

BANKERS SPECIALTY INSURANCE COMPANY

**********

APPEAL FROM THE
THIRTY-EIGHT JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-20864
HONORABLE H. WARD FONTENOT, JUDGE AD HOC

**********

## LEDRICKA J. THIERRY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Gary J. Ortego, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

**Max Guthrie**
**Lee Hoffoss Injury Lawyers**
**517 West College Street**
**Lake Charles, LA 70605**
**(337) 433-2053**
**COUNSEL FOR PLAINTIFFS-APPELLEES**
      **Ricky Leboeuf and Kimberly Leboeuf**

**James W. Hailey, III**
**Lena D. Giangrosso**
**Shiena Marie N. Burke**
**Lewis Brosbois Bisgaard & Smith, LLP**
**400 Poydras Street, Suite 1300**
**New Orleans, LA 70130**
**(504) 322-4100**
**COUNSEL FOR DEFENDANT-APPELLANT:**
      **Bankers Specialty Insurance Company**

**THIERRY, Judge.**

Defendant, Bankers Specialty Insurance Company, appeals the trial court's default judgment awarding to Plaintiffs, Ricky and Kimberly Leboeuf, damages for contents coverage and alternative living expenses under the insurance policy, as well as penalties and attorney fees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 27, 2020, Hurricane Laura swept through the Southwestern Louisiana area. The Plaintiffs' home in Bell City, Louisiana, was significantly damaged as a result of the hurricane. Plaintiffs also suffered further damage when Hurricane Delta swept through the area a few weeks later. Plaintiffs submitted a claim to their homeowner's insurance carrier, Bankers' Specialty Insurance Company, for property damages, contents loss and loss of use/alternative living expenses. A "Petition for Damages" was filed on August 22, 2022, alleging Bankers had not paid all of their damages, specifically seeking recovery under the contents and loss of use/alternative living expenses provisions of their policy with Bankers, and alleging bad faith under La.R.S. 22:1982 and 22:1973.[1] Bankers did pay Plaintiffs the $273,000 policy limits for the property damage. The petition requested service on Bankers through the Secretary of State. Bankers, in its appellate brief, acknowledges "it appears [service] was effectuated on September 6, 2022," but also stated "there is no evidence that said citation and petition were ever received by Bankers." There is no dispute that no answer or responsive pleadings were filed by Bankers to the petition.

---

[1] We note Act 3 of the current legislative session repealed La.R.S. 22:1973 and significantly amended La.R.S. 22:1982. However, that act does not go into effect until July 1, 2024 and does not affect this case.

On April 18, 2023, a Motion for Preliminary Default was filed asserting that "the record clearly reflects that no answer, or other pleadings, have been filed by the defendant; and that Mover desires the Court to order the entry of the preliminary default against defendant." On April 25, 2023, District Judge Penelope Q. Richard, recused herself from this matter due to her being "related to the plaintiffs in this matter to the fourth degree." H. Ward Fontenot was subsequently appointed as Ad Hoc Judge by the Supreme Court. On May 3, 2023, Judge Fontenot signed the preliminary default against Bankers. On May 15, 2023, Plaintiffs went before the district court seeking a default judgment. After the presentation of documentary evidence as well as the testimony of Ricky Leboeuf and Kimberly Leboeuf, the trial court granted the default judgment against Bankers for the following amounts:

| | |
|---|---|
| Loss of Contents | $136,500.00 |
| Loss of Use (ALE) | $ 30,511.30 |
| Penalty under La.R.S. 22:1982 | $ 83,505.65 |
| Attorney Fees | $ 83,505.65 |
| TOTAL | $334,022.60 |

Bankers appealed the granting of the default judgment in favor of Plaintiffs, asserting the following assignments of error:

1. The record revealed Bankers was given no notice of the motion for preliminary default judgment or the motion for final default judgment which violated its rights to due process.

2. The record reveals that Plaintiffs did not present sufficient evidence to support the entry of the default judgment and/or to sustain a finding of bad faith on the part of Bankers pursuant to La.R.S. 22:1892 or 22:1973.

**ANALYSIS**

### I. Notice Argument

Bankers first argues that Plaintiffs failed to give notice of their intent to obtain a default judgment. This lack of notice, Bankers asserts, renders the default judgment an absolute nullity, which should be vacated. The appellate court in *Carey v. United Prop.*, 22-831 (La.App. 1 Cir. 5/25/23), 369 So.3d 1, *writ denied*, 23-973 (La.

10/31/23), 372 So.3d 810, addressed an identical argument. In *Carey*, the Careys filed suit against an insurer (UPC) for failure to send adequate funds under its policy to complete repairs for damages to the Carey's home sustained as a result of Hurricane Ida. The Careys sought an application of statutory penalties, including amounts for general damages and attorney fees. Service of the petition was made on the Louisiana Secretary of State, UPC's designated agent for service. UPC failed to file an answer and the Careys sought a default judgment. The trial court held a hearing, at which evidence was adduced, including the testimony of the Careys and their independent estimator. At the conclusion of the hearing, the trial court ruled in favor of the Careys and awarded them damages due under the UPC policy, penalties and attorney fees. In its initial argument on appeal, UPC complained that the Careys failed to give notice of their intent to obtain a default judgment. The court addressed that argument as follows:

> UPC initially complains that the Careys failed to give notice of their intent to obtain a default judgment. Lacking notice, UPC asserts the default judgment is an absolute nullity, which should be vacated.
>
> [Louisiana Code of Civil Procedure] art. 1702(A) provides in relevant part:
>
>> (1) If a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, and the plaintiff establishes a prima facie case by competent and admissible evidence that is admitted on the record, a default judgment in favor of the plaintiff may be rendered, provided that notice that the plaintiff intends to obtain a default judgment is sent if required by this Paragraph, unless such notice is waived....
>>
>> (2) If a party who fails to answer has made an appearance of record in the case, notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail to counsel of record for the party, or if there is no counsel of record, to the party, at least seven days before a default judgment may be rendered.
>>
>> (3) If an attorney for a party who fails to answer has contacted the plaintiff or the plaintiff's attorney in writing concerning the action after it has been filed, notice that the

3

plaintiff intends to obtain a default judgment shall be sent by certified mail to the party's attorney at least seven days before a default judgment may be rendered.

(4) In cases involving delictual actions where neither Subparagraph (2) or (3) of this Paragraph applies, notice that the plaintiff intends to obtain a default judgment shall be sent by regular mail to the party who fails to answer at the address where service was obtained at least seven days before a default judgment may be rendered.

Reasoning that because a duty of good faith and fair dealing are statutorily imposed by the Insurance Code, see La.R.S. 22:1973, and the trial court awarded general damages, which are traditional recovery for delictual actions, UPC maintains that these claims by the Careys involve delictual actions and as such are subject to the notice provisions of Article 1702(A)(4). We disagree.

Whether a first-party bad faith claim against an insurer pursuant to La.R.S. 22:1973 for the alleged violation of an insurer's statutory duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims is a delictual action or a contractual claim is an issue addressed by the Louisiana Supreme Court in *Smith v. Citadel Insurance*, 2019-00052 (La. 10/22/19), 285 So.3d 1062, 1067, in the context of the appropriate prescriptive period. The *Smith* tortfeasor in a 2010 automobile accident case assigned her rights against her insurer for her claim under La.R.S. 22:1973 to the tort victim. The tort victim thereafter filed suit in 2017 against the tortfeasor's insurer, asserting via subrogation the tortfeasor's La.R.S. 22:1973 claim for the insurer's bad faith failure to fairly and promptly settle the damage claim. See *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So.3d 690, 695, citing *Smith*, 285 So.3d at 1064.

Noting that the classic distinction between damages ex contractu and damages ex delictos that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons, the *Smith* court pointed out that in the absence of the contractual obligations created between the *Smith* insurer and the tortfeasor, the duty of good faith would not have existed. See *Wightman*, 351 So.3d at 695, citing *Smith*, 285 So.3d at 1067. See also [La.Civ.Code] art. 1759 ("Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.") and La.[Civ.Code] art. 1983 ("Contracts have the effect of law for the parties.... Contracts must be performed in good faith."). Thus, the insurer's bad faith failure to settle was determined to have been a breach of its contractual obligation and interrelated fiduciary duty rather than a delictual obligation. See *Wightman*, 351 So.3d at 695-96, citing *Smith*, 285 So.3d at 1067.

Applying this distinction created by the Louisiana Supreme Court in the context of prescription to the notice requirements of Article 1702 in the context of default judgments, we conclude that in the absence of the contractual obligations created between UPC and the Careys, the duty of

4

good faith would not exist. The claim that UPC was in bad faith for failing to settle with the Careys within 30 days of receipt of satisfactory proof of loss constitutes an allegation of the breach of UPC's contractual obligation to settle and its interrelated fiduciary duty. The Careys' claims to general damages and penalties as set forth in La.R.S. 22:1973 arise from allegations of UPC's breach of its contractual obligations. Therefore, the notice requirements of La.[Code Civ.P.] art. 1702(A)(4) "[i]n cases involving delictual actions" are not implicated.

For the reasons stated in *Carey*, La.Code Civ.P. art. 1702 only requires that notice of intent to obtain a default judgment be given in a delictual action. As Plaintiffs' claims to damages and penalties arise from allegations of Bankers' breach of its contractual obligations under its policy of insurance issued to Plaintiffs, no notice was required. This assignment of error is without merit.

## II. *Evidence Argument*

Bankers argues the evidence presented at the default judgment hearing was insufficient to support the entry of a default judgment. It maintains the evidence at trial included hearsay and that some documents were not properly introduced into evidence.

An appellate court is restricted to determining the sufficiency of the evidence offered in support of a default judgment. This determination is a factual one governed by the manifest error standard of review. *Arias v. Stolthaven New Orleans, L.L.C.,* 08-1111 (La. 5/5/09), 9 So.3d 815. Although there is a presumption that a default judgment is supported by sufficient evidence, "this presumption may be rebutted by the record upon which the judgment is rendered." *Arias,* 9 So.3d at 820. Louisiana Code of Civil Procedure Article 1702(A) requires that a judgment of default be confirmed by proof of the demand "sufficient to establish a prima facie case." Article 1702(B) sets forth the evidentiary requirements for proving a prima facie case sufficient to confirm a default judgment. These requirements differ depending on the nature of the obligation, be it conventional or delictual. In this

5

case, as discussed above, the nature of the obligation is conventional and as such, is governed by La.Code Civ.P. art. 1702(B)(1), which provides:

> When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering a final default judgment.

Plaintiffs in this case did not rely on an affidavit and attached exhibits, but rather presented their testimony and introduced exhibits to which they testified. The insurance policy (P-2) was introduced at trial. The jurisprudence has recognized that uncertified copies of insurance policies and declaration sheets filed into the record are competent evidence if nothing in the record calls their authenticity into question. *Reed v. American Equity Ins. Co.*, 05-1298 (La.App. 3 Cir. 4/5/06), 927 So.2d 1210; *Adams v. Arceneaux*, 00-1440 (La.App. 1 Cir. 6/22/01), 809 So.2d 190, *writ denied*, 01-2559 (La. 12/7/01), 802 So.2d 640; *Grelle v. Youngblood*, 96-2210 (La.App. 4 Cir. 3/26/97), 691 So.2d 279. In this case, there is nothing that calls into question that Bankers issued a policy of insurance to Plaintiffs that included coverage for loss of contents and alternative living expenses.

Plaintiffs also presented a letter (P-1) which set forth that they rented a trailer to live in while their home was inhabitable, which stated it was at a cost of $2,500.00 per month for eleven months. While Plaintiffs acknowledge the letter was hearsay, it was also testified to by Mr. Leboeuf that they rented the trailer for that amount and for that duration. It was also testified that Bankers was aware of this and approved the rental of the trailer, were provided proof of the rental amounts more than thirty days before the hearing, and no payments had been made.

Plaintiffs also presented a list (P-3) of food and out-of-pocket expenses incurred while Plaintiffs were staying at a motel following the hurricanes. That list

was supported by testimony from Mr. Leboeuf as to what those items were, why they were purchased and that they amounted to $4,200.00. He further stated he sent those receipts to Bankers four separate times before he was told that they had been received by Bankers and that they were sent more than thirty days before the hearing and had not been paid.

Plaintiffs also presented a list of contents (P-4) that purported to establish the amount of the contents lost was approximately $190,000.00, well over the policy coverage of $136,500.00 for contents. Plaintiffs testified they received no amount from Bankers for the loss of contents. Mr. Leboeuf testified that a representative from Bankers did come out and do an inspection of his home after Laura, but prior to Delta. Ms. Leboeuf also testified that she did receive confirmation from a representative at Bankers that they received the contents list sent to Bankers:

> A. - - I did call the lady [from Bankers] that I was sending it to and tell her it was coming express, it was coming to a P.O. Box. And you don't have that because I – I just remembered it when I was sitting.
>
> Q. But you did get confirmation of their receipt of your contents list?
>
> A. Well, what – what happened is, I called the lady, the – the woman that I was sending it to. Because they messed up at work. Because I wanted her to sign for it, but she didn't. And it was delivered to a P.O. Box. So they have to come in – and since it didn't require a signature, all they did was scan it, put it in the P.O. Box. So she didn't actually – so I called her when I seen that she wasn't going to sign for it. So I called her and I said, "Look, it's sitting in your P.O. Box, go get it."
>
> Q. Okay.
>
> A. And I returned the call and I asked her if she got it. And she told me, "Yes, I got it."

Bankers first argues, that while Plaintiffs did testify at the hearing for default judgment, there was an absence of any physical evidence properly filed and introduced into the record. Bankers argues while counsel for Plaintiffs attempted to introduce the four exhibits during the court proceedings, it does appear the trial court

did not specifically say that the exhibits (other than the insurance policy) were being accepted into evidence. On P-1, P-3, and P-4, counsel for Plaintiffs stated he was introducing the exhibits, but there is no response from the trial court that he was admitting them into evidence. However, the record is clear that the trial court did not in any way question the admissibility of the exhibits. Further, the trial court listened to testimony as to the content of the exhibits and asked questions regarding the exhibits. Thus, it is clear the trial court considered the exhibits as having been introduced.

Bankers also maintains Plaintiffs testimony fails in this matter because it was "in ranges and estimates and approximates, rather than definitive numbers." Thus, Bankers argues the testimony was too vague to permit the specific amount the judgment awarded. However, Plaintiffs' testimony was supported by the exhibits. As to the ALE, Plaintiff presented receipts that documented the out-of-pocket expenses incurred while they were unable to reside in their house. The testimony acknowledged what these specific expenses were and why they were purchased. It was also testified that the receipts were sent to Bankers several times and that more than thirty days expired without payment of any amount by Bankers. Similarly, Plaintiffs' testimony as to contents loss was supplemented by the contents list prepared by Plaintiffs and provided to Bankers. This contents list totaled well in excess of the $136,500.00 in contents coverage provided by the insurance policy. Plaintiffs also testified the list had been provided to Bankers and more than thirty days had passed with no payment made.

The law is clear that in considering whether the evidence and testimony were sufficient to sustain the judgment rendered, this court is to apply the manifest error standard of review. We find no manifest error in the trial court's finding that the

8

evidence presented by Plaintiffs was sufficient to prevail at a trial on the merits, and thus, sufficient to establish a prima facie case.

Bankers also argues the evidence in the record was insufficient to support the judgment of bad faith on the part of Bankers, which permitted the recovery of penalties and attorney fees in this matter. Louisiana Revised Statutes 22:1892(A)(1) generally requires insurers to pay the amount of any claim due to any insured within 30 days after receipt of satisfactory proofs of loss. Section (B)(1) of that statute provides, in pertinent part:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor ... when such failure is found to be arbitrary, capricious, or without probable cause, *shall subject the insurer to a penalty*, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured ... or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due *as well as reasonable attorney fees and costs*. (Emphasis added.)

That statute must be strictly construed because it is penal in nature. It subjects an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount or make a written offer to settle a claim within thirty days of satisfactory proof of loss, to the mandatory imposition of penalties and attorney fees for the collection of such amount. An insured who claims penalties and attorney fees under La.R.S. 22:1892 has the burden of proving that the insurer received a "satisfactory proof of loss" as a necessary predicate to a showing that the insurer was arbitrary, capricious, or without probable cause.

A "satisfactory proof of loss" is that which is "sufficient to fully apprise the insurer of the insured's claim." *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 08-453, p. 23 (La. 12/2/08), 999 So.2d 1104, 1119. A satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss. *Id*. "Thus, in order to prevail

9

under La.R.S. 22:1892, a claimant must establish (1) that the insurer received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period, or failed to make a written offer to settle the claim, and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause." *Bourg v. Safeway Ins. Co. of Louisiana*, 19-270, p. 14-15 (La. App. 1 Cir. 3/5/20), 300 So.3d 881, 891.

Bankers maintains while the trial court granted final judgment against it, there is no evidence in the record that Bankers **received** satisfactory proof of loss. Bankers in brief stated that Plaintiffs' "testimony reveals that [Plaintiffs] admit that they had significant difficulty producing documents to Bankers, with multiple attempts having to be made on numerous occasions. Despite this, Plaintiff's attempted evidence does not include a single mail receipt, email, confirmation of receipt, facsimile receipt, or other evidence of *receipt* of the alleged satisfactory proof of loss by Bankers."

Plaintiffs rely on *Harris v. Imperial Fire & Cas. Ins. Co.*, 20-1323 (La.App. 1 Cir. 7/21/21), 328 So.3d 1208, *writ denied*, 21-1282 (La. 11/17/21), 327 So.3d 994., where the court noted that "Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss." The court in *Harris* sustained a motion for summary judgment on bad faith with regards to a content claim. Similar to here, the insured in *Harris* submitted a partial contents list and the insurer failed to make any payment within thirty days. As here, the insured argued there was no evidence it was arbitrary and capricious. The *Harris* court held "the unwarranted delay by Imperial in timely paying the first contents claim satisfies the definition of 'arbitrary, capricious and without probable cause.'" *Id.* at 1210. Likewise, Plaintiffs argue once Bankers had the contents list, it had all the information it needed to begin evaluating and investigating the claim and the failure to make any claim within the

10

thirty-day period provided by law satisfied the definition of arbitrary and capricious. Plaintiffs note there is no dispute that Bankers provided contents and ALE coverage under its policy with Plaintiffs. Thus, this issue comes down to whether the evidence establishes whether Bankers received satisfactory proof of loss before the hearing. If satisfactory proof of loss was made, clearly Bankers failed to make any payment within that thirty-day window and was arbitrary and capricious in doing so.

Whether and when satisfactory proof of loss was received is a question of fact. *Sevier v. U.S. Fidelity & Guar. Co.*, 497 So.2d 1380 (La. 1986). According to the Louisiana Supreme Court, "'proof of loss' is a vehicle meant to advise an insurer of the facts of the claim and often takes the form of an estimate of damages prepared on behalf of the insured." *Katie Realty, Ltd. v. La. Citizens Prop. Ins. Corp.*, 12-588, p. 9 (La. 10/16/12), 100 So.3d 324, 330. "Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss." *Louisiana Bag Co.*, 999 So.2d at 1119; *Sevier*, 497 So.2d at 1384. As long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial. *Sevier*, 497 So.2d at 1384.

In this case, Bankers does not argue that it provides coverage for contents loss and alternative living expenses. Thus, upon receiving satisfactory proof of loss there is no basis for Bankers to refuse payment under the insurance policy. The trial court did not manifestly err in finding that Bankers received satisfactory proof of loss and failed to make any payment within thirty days after receipt of such. Therefore, the finding of bad faith was not in error, subjecting Bankers to penalties and attorney fees.

11

**DECREE**

For the foregoing reasons, the judgment of the lower court is affirmed. All costs of this appeal are assessed to defendant-appellant, Bankers Specialty Insurance Company.

**AFFIRMED.**