299 So.2d 815 (1974)
Calvin J. PELAS, Sr.
v.
AMERICAN EMPLOYERS' INSURANCE COMPANY.
No. 6038.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1974.
Rehearing Denied September 10, 1974.
Writ Refused November 8, 1974.
Hilary J. Gaudin, Lee C. Grevemberg, New Orleans, for plaintiff-appellee.
Hammett, Leake & Hammett, Craig R. Nelson, New Orleans, for defendant-appellant.
Before SAMUEL and SCHOTT, JJ. and MARCEL, J. Pro Tem.
*816 CLEVELAND J. MARCEL, Sr., Judge Pro Tem.
This suit was filed on July 8, 1970 on an insurance policy, wherein plaintiff-appellee sued to recover for the loss of a dragline, lost while aboard a barge, in the Mississippi River on July 6, 1969.
From a judgment in favor of plaintiff, Pelas, defendant-appellant, American Employers Insurance Company appealed. We affirm.
The thrust of appellant's case is that appellee failed to file a written notice of loss as required by the policy of insurance; failed to cooperate with American in conducting an investigation of the loss and entrusted the insured item with someone whose infidelity caused the loss, thus excluding it from coverage under the policy. Appellant also urges that Pelas failed to establish the actual cash value of the dragline.
The trial court found American guilty of being arbitrary and capricious in not paying the policy limits to plaintiff and ordered American to pay penalties and attorney's fees.
Pelas testified that he acquired the dragline in 1958 for the sum of $2,000 and subsequently spent $8,500 repairing same. In 1968, he placed the dragline upon the deck of barge M-46. He had entered into a rental-purchase agreement with Motto Francevich to purchase the barge. The dragline mounted on the barge was used to cut slips. Prior to placing the dragline on the M-46, he contacted a Mr. Ostendorf, a friend who was an employee of Martin-LeBreton Insurance Agency. A policy of insurance, which is sued upon, was issued in the sum of $10,000. The M-46 remained in the slip belonging to Francevich near Empire, Louisiana. In the slip, it was spudded down; that is, spuds, or long rods on either side of the barge were lowered through their holders into the water bottom and these securely anchored the vessel. Pelas states that in June or July, 1969, he drove to Motto's boatyard (some eight miles from his home) and his barge wasn't there. He was advised that a squall and heavy winds forced the vessel against the bank. Water came over the vessel later on and caused the barge to sink. He called Mr. Ostendorf and advised him of what had happened. Ostendorf acknowledged the claim and a notice of loss was made by Martin-LeBreton to American. The date of the loss is shown as July 9, 1969.
The testimony of both Ostendorf and Pelas reflects that they met on several occasions thereafter, and on each occasion, Pelas asked Ostendorf about his loss and Ostendorf replied in each instance that the insurance company was handling it. Furthermore, Ostendorf knew the whereabouts of Pelas and his correct address. American could have reached Pelas, if an inquiry had been made.
Mr. Rolland Wilkins testified that he was an employee of Employers' Commercial Union Company, of which American is one of the group. His job is that of chief adjuster and supervisor. He alleges he made an investigation of the claim sued upon but was unable at any time to contact Pelas. He wrote a letter to Pelas and this letter was not returned. He contacted Ostendorf and asked him if he did see Pelas that he, Wilkins, would like to see him. This court is not impressed with the fact that there was a lack of cooperation on the part of Pelas, but rather there was a lack of diligence on the part of defendant's agents in seeking the cooperation. The allegations of the defendant in this regard are without merit.
As to the proof of loss, Wilkins states that no proof of loss blanks were submitted to Pelas because it was premature. Normally as much information as possible is sought concerning the loss before the proof of loss is submitted. Wilkins further stated that Hurricane Camille struck and he had many claims to handle. This court can only conclude from the record that *817 Wilkins did not do the investigative work desired and no proof of loss blanks were ever supplied Pelas.
Plaintiff cited Bamburg v. American Security Life Ins. Co., 241 So.2d 606 (1970) but this case is inapplicable. In that case, requests for proof of loss were made by plaintiff but no forms were ever sent him. The court found that this constituted a waiver by the insuror. In the instant case, there is a negation of the necessity for the proof of loss by defendant's agent. This is an absolute contradiction to the express verbiage of the contract. For defendant-appellant to now assert the necessity of a proof of loss and by the testimony of their agent, deny the necessity for such proof, surely constitutes a waiver by the insuror of the necessity of a proof of loss. To find otherwise would place the claimant in an untenable position. Defendant's position in this regard is without merit.
In the month of August, 1969, Wilkins' claim supervisor, Frank Cefalu called his attention to an article in the Times-Picayune, wherein the article stated that a federal grand jury indictment was returned against Calvin J. Pelas, Sr. for removing equipment from a vessel and then sinking it. Wilkins stated, "We had suspicions and we though we had better investigate the matter thoroughly." Also, Motto Francevich, from whom Pelas bought the barge M-46, had been convicted of sinking of vessels by a federal court and was serving time in the federal penitentiary. Wilkins went on to state that, although they had these suspicions, they were hampered in their investigations because of the heavy work load brought on by Hurricane Camille and from all indications, the matter was merely left in abeyance until such time as a suit was filed by Pelas, plaintiff-appellee.
The jurisprudence of this state is so well settled as to require that specific exclusions in a policy of insurance must be proven and the burden of proving said exclusions rests upon those asserting them, the insuror. Clearly, the appellants have failed to discharge this burden. On the contrary, the testimony of Ostendorf and Wilkins leads this court to the conclusion that Pelas was lulled into a feeling of complacency thinking his claim was being handled by American. This testimony refutes the need for a proof of loss.
The record further indicates that no real effort to locate Pelas to seek his cooperation was made. In fact, the testimony signally points out that Wilkins was very busy with claims from Hurricane Camille and only because he suspected that fraud may exist, did he delay the resolution of Pelas' claim. It is significant that Pelas' suit was filed just one day before the anniversary of the loss.
This court must conclude, as the lower court did, that the unwarranted delay by American in its investigation of this case and the refusal of Pelas' claim under the terms of the insurance contract is arbitrary and capricious, and without probable cause.
For the foregoing reasons the judgment of the lower court is affirmed. Cost of this appeal to be borne by defendant-appellant.
Affirmed.
SCHOTT, J., dissenting.
SCHOTT, Judge (dissenting).
The policy sued on in this case provides:
"This policy insures, except as hereinafter excluded, against direct loss or damage resulting from any external cause."
As in any action on an insurance policy the burden is upon the plaintiff to prove the loss insured against. From my careful review of the record in this case I have concluded that the plaintiff did not prove that the insured barge was lost in the first *818 instance and consequently he failed to carry his burden of proof.
He testified that he left the barge with the dragline in the care of one Motto Francevitch and that he had seen it spudded down in the boatyard prior to July, 1969, when one morning he went to the yard and found that the dragline wasn't there. He attempted to prove by hearsay testimony with conversations he had with someone named "Ness" and with Francevitch himself that the barge had sunk, but timely objection was made to this testimony and the trial judge erroneously overruled the objection. With this evidence removed from the record there is no admissible evidence to support what happened to the barge, although this evidence was presumably available to plaintiff. There was testimony to the effect that Francevitch was in a penitentiary in Texarkana, Arkansas, where his deposition could have been taken. As to Ness, no evidence whatsoever was placed in the record to explain why he was not called. On cross examination, plaintiff was asked the question, "As far as you know, of your own direct knowledge, that barge and the link belt might be sitting over in some bayou somewhere, just in perfectly good shape, is that correct?" And after some objections and arguments between counsel the witness finally answered, "I couldn't say where it was."
In the majority opinion, the statement is made that plaintiff "was advised that a squall and heavy winds forced the vessel against the bank. Water came over the vessel later on and caused the barge to sink." This testimony was absolutely inadmissible and should not be considered by this Court. The history of the statement is that it appears in the proof of loss entered in evidence over the objection of defendant on the testimony of the insurance agent to the effect that he received a telephone call from plaintiff and had this memorandum written up by someone in his office.
When all of the inadmissible testimony is expunged from the record we are left with no evidence whatsoever that this barge and dragline were ever lost. That being the case, plaintiff has failed to prove his case and his suit should be dismissed.
I respectfully dissent.