361 So.2d 1281 (1978)
Clifford D. PAUL
v.
NATIONAL AMERICAN INSURANCE COMPANY.
No. 12053.
Court of Appeal of Louisiana, First Circuit.
July 10, 1978.
Rehearing Denied August 31, 1978.
Writ Refused October 26, 1978.
*1282 A. Clay Pierce, Jr., Baton Rouge, of counsel for plaintiff-appellee Clifford D. Paul.
Paul B. Deal, New Orleans, of counsel for defendant-appellant National American Insurance Co.
Before LANDRY, SARTAIN and ELLIS, JJ.
*1283 LANDRY, Judge.
Defendant (Appellant) appeals from judgment awarding plaintiff (Insured) 25% penalties and $3,500.00 attorney's fees for alleged untimely payment of a fire loss which completely destroyed Insured's home and its entire contents. We amend to reduce the penalties to 12% and the attorney's fees to $2,750.00.
The dwelling and contents were insured for $50,000.00 and $25,000.00, respectively. The fire occurred June 30, 1976, on which same day Insured reported the loss to his local insurance agent, who informed Insured that an adjuster would contact Insured within a few days. Shortly thereafter, Insured was contacted by T. J. Pittman, an adjuster in the employ of General Adjustment Bureau, to which concern Appellant assigned the claim for handling. Pittman sent Insured a set of forms to fill out concerning the contents of the residence. Insured completed these forms, listing and itemizing contents valued at approximately $20,000.00. Thereafter, Pittman personally inspected the scene of the fire, examined the remains of the residence and contents, reached a valuation of the structure, and verified content valuations by checking with one or more stores where Insured reported purchases to have been made. After said inspection, Pittman valued the residence at $74,000.00. According to Insured, Pittman discussed in detail the list of contents and upon being advised that Insured had put new carpeting in the residence, Pittman advised Insured that the value of the contents, including carpeting, should equal the policy limits of $25,000.00 on the contents. Pittman concedes that he never requested Insured to sign a formal proof of loss statement, and that Insured was fully cooperative and complied with every request Pittman made for information about the loss. Pittman further concedes that the list of contents was apparently accurate and sufficient for adjustment purposes. Insured acknowledges that he never executed a formal proof of loss statement.
Insured's uncontradicted testimony is that when he submitted the requested itemization of contents, he was told by Pittman that such claims were usually settled within two weeks or so. Hearing nothing from Pittman, Insured began calling Pittman, requesting information as to the status of the claim. Pittman's response was that he had heard nothing from the "main office", although Pittman had recommended settlement. Insured called Pittman every week or every other week, and was told that Pittman could not understand why the claim had not been paid. Insured further stated that on several occasions, commencing in late 1976, or early 1977, Insured made it clear to Pittman that Insured wanted his money, but that Insured never demanded any specific amount. Insured's testimony in effect is that he never demanded any specific amount because he was led by Pittman to believe that policy limits would be paid on contents.
In early February, 1977, Insured was contacted by Richard Green, to whom the matter had been referred for settlement. Green requested a statement and Insured replied that he would let Green know. Insured then consulted an attorney, following which Insured informed Green that Insured would furnish a statement if Insured received payment within 5 to 7 days, because Insured had waited long enough for his money. Insured then engaged an attorney, called Green and advised Green to contact the attorney. This suit was filed February 24, 1977.
In February and March, 1977, Green requested and received formal proof of loss from two mortgagees holding outstanding liens against subject property. Upon submission to Appellant, these claims were paid promptly. Pittman's testimony leaves the clear impression that the claims were not paid sooner because Appellant was waiting to hear from the State Fire Marshall's Office, which it was believed was investigating the fire, but that no such investigation was under way. In any event, Pittman's testimony is crystal clear that the delay was not due to lack of cooperation by Insured or to failure of Insured to furnish any information or data requested. Pittman's *1284 testimony affirmatively shows that Insured was most cooperative.
After filing suit, Appellant posed interrogatories. In response thereto, Insured admitted the content loss to be $17,589.14. Appellant then deposited in court $20,439.91 on June 24, 1977, which included a tender of $17,589.14 for contents loss and $2,850.77 due on the residence over and above the amount paid mortgagees. Based on this alleged tender, Appellant moved to dismiss the action on the ground that the claim was paid within 60 days of demand, Appellant contending that Insured's admission of content value constituted the first legal demand for payment.
Appellant maintains that no penalties and attorney's fees are due because Insured never filed formal proof of loss or made demand for a specific amount. Alternatively, Appellant claims it properly considered Insured's judicial admission of amount claimed as a legal demand pursuant to which the claim was timely paid. In the further alternative Appellant contends: (1) Penalties, if due, are owed in the amount of 12% only, not 25% as awarded by the trial court; (2) Penalties are due only on the amount actually paid Insured personally, namely $20,439.91, and not on the amount paid the mortgagees, as was allowed by the trial court; and, (3) attorney's fees should be reduced in accordance with reduced penalties.
La.R.S. 22:658 provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees." Amended and reenacted Acts 1958, No. 125.
Citing Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338 (1957); Tedesco v. Columbia Insurance Company, 177 La. 142, 148 So. 8 (1933); and Cryer v. Gulf Insurance Company, 276 So.2d 889 (La.App. 1st Cir. 1973), Appellant correctly urges that the applicable statute is penal and must be strictly construed. On authority of American Motorist Insurance Company v. Wilson, 256 So.2d 813 (La.App. 4th Cir. 1972) and Steadman v. Pearl Assurance Company, 127 So.2d 366 (La.App. 4th Cir. 1961), Appellant argues that penalties and attorney's fees are not due unless demand therefor is made in a specific amount.
Notwithstanding the rule of strict construction applicable in cases of this nature, our jurisprudence establishes that the pertinent statute does not require written proof of loss, or any other formal style of proof; it is required only that the insurer have actual knowledge of the facts. Artigue v. Louisiana Farm Bureau Mutual Insurance Company, 339 So.2d 880 (La.App. 3rd Cir. 1976); Wilkins v. Allstate Insurance Company, 173 So.2d 199 (La.App. 1st Cir. 1965). In this case, Appellant was fully apprised of the claim through Pittman's personal investigation of the premises and the list of contents furnished by Insured. Pittman's testimony establishes conclusively that the delay in payment was not due to any fault of Insured.
*1285 Insured testified without contradiction that beginning in about December, 1976, he repeatedly requested of Pittman that payment of the loss be made. Insured admits that he did not request payment of a specific sum. The clear import of Insured's testimony is that he was led by Pittman to believe that the entire content coverage would be paid. We find, as did the trial court, that Insured made verbal demand for payment. Written demand is not required. Artigue, above. So finding, we reject Appellant's contention that penalties are not due because of a lack of demand and also reject Appellant's alternative argument that payment was made within 60 days of Insured's answer to Appellant's interrogatories, which answer Appellant contends is the only demand made by Insured.
Insured requests that we re-examine Foster v. Western World Insurance Company, 339 So.2d 395 (La.App. 1st Cir. 1976), wherein we held that penalties of 12% and not 25% are due for failure to timely pay a fire loss on a dwelling. In Foster, we reviewed the issue in detail. We think the views expressed in Foster are correct and see no useful purpose to be gained by repeating them herein. We conclude that the trial court erred in assessing penalties of 25% herein.
We find, however, that penalties of 12% are due on the entire loss of $67,589.14, even though a portion of the sum was paid to two mortgagees pursuant to the mortgages and loss payable provisions of the policy. A mortgagor's interest encompasses the full value of the property because, in the event of loss, mortgagor is still liable for the debt. Allen v. Houston Fire and Casualty Company, 243 So.2d 905 (La.App. 3rd Cir. 1971).
Our attention has been directed to Woodard v. Prudential Insurance Company of America, 350 So.2d 948 (La.App. 2d Cir. 1977), which involved payment of proceeds of a health and accident policy to a credit union in discharge of the insured's loan. In the cited case, the court awarded 12% penalties on the amount paid the lender, without discussion of whether such payment was "loss, payable to the insured . . . ."
Since payment to the mortgagees discharged a personal obligation owed by Insured herein, such payment meets the statutory requirement of "loss, payable to the insured . . . ." Penalties of 12% are due for failure to pay such loss within 60 days as provided by La.R.S. 22:658.
We find that Insured is entitled to penalties of 12% of $67,589.14, or $8,110.70. Considering the reduction in penalties and that Insured's attorney has had to defend this appeal, we find an award of $2,750.00 for attorney's fees to be in order.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended to award Insured penalties in the sum of $8,110.70 and attorney's fees in the amount of $2,750.00, together with legal interest from date of judicial demand, until paid. All costs of these proceedings to be paid by Appellant.
Amended and rendered.