STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1323

2020 CW 0869

WILLIAM and AMANDA HARRIS

VERSUS

IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY

Judgment Rendered:  **JUL 2 1 2021**

* * * * * * *

On Appeal from the 23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Trial Court No. 122,329

Honorable Jason Verdigets, Judge Presiding

* * * * * * *

| | |
|---|---|
| Christopher K. Jones<br>John N. Grinton<br>Baton Rouge, Louisiana | Attorneys for Plaintiffs/Appellees/<br>Appellants in Answer,<br>William and Amanda Harris |
| Sidney W. Degan, III<br>Eric D. Burt<br>Janna Campbell Underhill<br>Jordan P. Amedee<br>Baton Rouge, Louisiana | Attorneys for Defendant/Appellant,<br>Imperial Fire and Casualty Insurance<br>Company |

* * * * * * *

**BEFORE:  McDONALD, HOLDRIDGE, AND PENZATO, JJ.**

Holdridge J., concurs with reasons assigned

**PENZATO, J.**

In this suit for bad faith damages, the defendant insurer, Imperial Fire and Casualty Insurance Company ("Imperial"), seeks review of a summary judgment granted in favor of the plaintiffs, William and Amanda Harris, as to their structure and first contents claims. Imperial filed an application for supervisory writs, and after the trial court signed an amended judgment, Imperial filed a suspensive appeal. The Harrises filed a motion to dismiss/deny Imperial's writ application. In addition, they answered the appeal, seeking review of a summary judgment granted in favor of Imperial as to the Harrises' second contents and Increased Replacement Cost Coverage (IRCC) claims. For the reasons that follow, we deny Imperial's writ application, dismiss the Harrises' motion to dismiss/deny the writ as moot, affirm the judgment in part, reverse the judgment in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On May 15, 2015, Imperial issued a homeowner's policy to the Harrises for their home in Gonzales, Louisiana. The policy was in effect on January 13, 2018, when the Harrises' home caught fire and sustained extensive damage. The Harrises immediately reported the fire, and damages to their home and contents, to Imperial, who assigned adjuster Chane Turner to their claim. Mr. Turner personally inspected the home twice, and Imperial thereafter retained a third-party estimator to adjust the Harrises' structure claim. On March 13, 2018, the Harrises were informed by e-mail that Imperial had concluded their home was a total loss. On March 26, 2018, the Harrises received two checks totaling $424,253.22, which represented the remainder of their policy's structure limits of $426,600.00.[1] On March 20, 2018, the Harrises provided Imperial with an initial list of damaged contents, and on May 9, 2018, provided Imperial with an updated and comprehensive list of their contents destroyed by the fire. They received a

---

[1] Imperial had previously issued a payment of $2,343.78 for temporary repairs.

2

payment from Imperial of $174,829.75 on June 2, 2018 for the items included on the original March 20, 2018 contents list. On June 11, 2018, they received a check in the amount of $32,470.25, representing the remainder of the available policy limits for contents, less an advance payment of $5,000.00 and a deductible of $1,000.00. On June 12, 2018, the Harrises filed suit against Imperial, alleging that they provided Imperial with satisfactory proof of loss, and despite receipt of this proof, Imperial arbitrarily, capriciously, and without probable cause, failed to timely, properly, or sufficiently pay their fire insurance coverage claim under the policy and delayed the investigation of claims. The Harrises alleged that Imperial's failure to timely and properly pay their fire insurance coverage claims under the policy was in direct violation of La. R.S. 22:1892 and La. R.S. 22:1973.

On March 21, 2019, the Harrises filed a supplemental and amending petition for damages. The Harrises alleged that their homeowner's insurance policy included an IRCC endorsement that provided additional coverage in the event the cost to replace their home exceeded the stated policy limits. According to the Harrises, Imperial had knowledge at least by March 13, 2018, that the cost to replace their home would greatly exceed the structure policy limits, but despite the knowledge that the IRCC endorsement would apply, Imperial did not issue any payment to the Harrises under the IRCC endorsement until November 5, 2018. The Harrises argued that Imperial's payment was untimely, and that such delay was arbitrary and capricious, entitling them to recover penalties, attorneys' fees, interest and costs associated with the delayed payment.

On January 30, 2020, the Harrises filed a motion for summary judgment requesting that Imperial be found in bad faith, pursuant to La. R.S. 22:1892(A)(1) for its arbitrary and capricious delay of payment to the Harrises for their structure, contents, and IRCC endorsement claims. According to the Harrises, Imperial failed to timely pay their claims under multiple coverages of their homeowner's

3

policy. More specifically, with regard to their structure claim, the Harrises argued that Imperial did not pay the claim until 62 days after the fire, in violation of La. R.S. 22:1892(A)(1), which requires full payment of the undisputed amount due within 30 days after satisfactory proof of loss; the only excuse Imperial provided for its failure to timely pay the structure claim was its adjuster's workload with other claims, which excuse failed to meet the standard set forth in La. R.S. 22:1892(B)(1). With regard to their contents claim, the Harrises alleged that they did not receive payment for the initial list of contents until 74 days after submission, and they did not receive payment for the remaining contents until 33 days after submission; Imperial's only excuse for its failure to timely pay was the adjuster's workload with other claims, which excuse gives rise to bad faith. Finally, the Harrises alleged that despite Imperial's knowledge that the cost to repair or replace their home would exceed the structure policy limits by more than $100,000.00, Imperial did not pay the full limits of the IRCC endorsement until 237 days after the total loss estimate was received; further, because Imperial paid the full limits of the endorsement but refused to provide the reason for the late payment, it is estopped from arguing the payment was not owed.

On March 2, 2020, Imperial filed a cross-motion for partial summary judgment. According to Imperial, it was entitled to partial summary judgment as a matter of law because the undisputed material facts demonstrated that Imperial timely paid all insurance proceeds due for damage to the structure and contents of the Harrises' home within 30 days of receiving satisfactory proof of loss, and that even if the Harrises did not receive the payment within 30 days, Imperial mailed the payment within the applicable statutory time period. Imperial further asserted that it gratuitously paid all amounts that may have been due pursuant to the IRCC endorsement, notwithstanding that it had no obligation to do so in the absence of timely notice that the Harrises had actually begun rebuilding a home, and in the

4

absence of proof of the certain amount that the Harrises had actually and necessarily incurred to rebuild the home.

The motions for summary judgment came for hearing before the trial court on June 2, 2020. Following the arguments of counsel, the trial court took the matter under advisement. On July 1, 2020, the trial court signed a judgment that granted in part the Harrises' motion for summary judgment regarding the structure claim and first contents claim, and denied in part the Harrises' motion for summary judgment regarding the second contents claim and the IRCC claim. The judgment further granted in part Imperial's motion for partial summary judgment regarding the second contents claim and the IRCC claim, and denied in part Imperial's motion for partial summary judgment regarding the structure claim. The trial court also issued written reasons in connection with its judgment.

On July 14, 2020, the Harrises filed a motion for new trial requesting the trial court amend its July 1, 2020 judgment because it did not contain the necessary decretal language and was not designated as final.[2] The Harrises sought an amended judgment that reflected the trial court's reasons for judgment and included all necessary decretal language. Imperial also moved for a new trial, seeking reversal of portions of the trial court's July 1, 2020 judgment. In addition, Imperial filed a notice of intent to apply for supervisory writs to seek review of the July 1, 2020 judgment.

---

[2] The July 1, 2020 judgment provided, in pertinent part:

> **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that this Court **GRANTS IN PART** Plaintiffs' Motion for Summary [Judgment] regarding the structure payment and first contents payment. This Court **DENIES IN PART** Plaintiffs' Motion for Summary Judgment regarding the second contents payment and the IRCC payment.
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court **GRANTS IN PART** Defendant's Motion for Partial Summary Judgment regarding the second contents payment and the IRCC payment. This Court **DENIES IN PART** Defendant's Motion for Partial Summary Judgment regarding the structure payment.

Following a hearing, the trial court denied Imperial's motion for new trial, granted the Harrises' motion for new trial, and signed an amended judgment on September 9, 2020. Imperial appealed from both the July 1, 2020 judgment and the September 9, 2020 judgment. The Harrises filed a motion to dismiss/deny Imperial's writ application as moot, contending that the September 9, 2020 judgment superseded the July 1, 2020 judgment at issue in the writ application. Another panel of this court referred both the writ and the motion to dismiss/deny the writ application to this panel, the panel to which the appeal was assigned. See *William and Amanda Harris v. Imperial Fire and Casualty Insurance Company*, 2020 CW 0869 (La. App. 1 Cir. 10/26/20) (unpublished action).

We find that the September 9, 2020 judgment replaces and supersedes the July 1, 2020 judgment. Thus, we will address the merits of Imperial's appeal of the September 9, 2020 judgment, deny Imperial's writ application, and dismiss as moot the Harrises' motion to dismiss/deny the writ application.

Imperial's appeal raises the following assignments of error:

(1)    The trial court erred in denying Imperial's cross-motion for partial summary judgment on the structure damage claim.[3]

(2)    The trial court erred in granting the Harrises' motion for summary judgment on the structure damage claim.

(3)    The trial court erred in granting the Harrises' motion for summary judgment on the first contents claim.

The Harrises answered the appeal, raising the following assignments of error:

(1)    The trial court erred in denying the Harrises' motion for summary judgment on the second contents claim.

(2)    The trial court erred in granting Imperial's cross-motion for partial summary judgment on the second contents claim.

---

[3] The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court will review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. *Crowe v. Bio-Medical Application of Louisiana, LLC*, 2014-0917 (La. App. 1 Cir. 6/3/16), 208 So. 3d 473, 478 n.6, writ denied, 2017-1502 (La. 5/12/17), 219 So. 3d 1106.

(3) The trial court erred in denying the Harrises' motion for summary judgment on the IRCC endorsement payment claim.

(4) The trial court erred in granting Imperial's cross-motion for partial summary judgment on the IRCC endorsement payment claim.

## LAW AND DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20), 306 So. 3d 437, 440.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610. Because it is the applicable

7

substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand*, 306 So. 3d at 440.

Louisiana Revised Statutes 22:1892(A)(1) generally requires insurers to pay the amount of any claim due to any insured within 30 days after receipt of satisfactory proofs of loss. Section (B)(1) of this statute provides, in pertinent part:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor … when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured … or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

This statute must be strictly construed because it is penal in nature. *Richardson v. GEICO Indem. Co.*, 2010-0208 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314, <u>writ denied</u>, 2010-2473 (La. 12/17/10), 51 So. 3d 7. It subjects an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount or make a written offer to settle a claim within 30 days of satisfactory proof of loss, to the mandatory imposition of penalties and attorneys' fees for the collection of such amount. *Bourg v. Safeway Insurance Company of Louisiana*, 2019-0270 (La. App. 1 Cir. 3/5/20), 300 So. 3d 881, 890.

An insured who claims penalties and attorneys' fees under La. R.S. 22:1892 has the burden of proving that the insurer received a "satisfactory proof of loss" as a necessary predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Richardson*, 48 So. 3d at 314. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1119; *Bourg*, 300 So. 3d at 890. "Proof of loss" is a vehicle meant to

advise an insurer of the facts of the claim and often takes the form of an estimate of damages prepared on behalf of the insured. *Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0588 (La. 10/16/12), 100 So. 3d 324, 330. However, Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss. *Louisiana Bag Co.,* 999 So. 2d at 1119; *Sevier v. U.S. Fidelity & Guar. Co.,* 497 So. 2d 1380, 1384 (La. 1986). As long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial. *Sevier,* 497 So. 2d at 1384. Thus, a satisfactory proof of loss occurs when the insurer has adequate knowledge of the loss. *Richardson*, 48 So. 3d at 314. Whether and when a satisfactory proof of loss was received is a question of fact. *Id.*

In order to prevail on a claim under La. R.S. 22:1892, a claimant must not only establish that the insurer received satisfactory proof of loss. He must also establish that the insurer failed to pay the claim within the applicable statutory period, or failed to make a written offer to settle the claim; and that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause. See *Bourg*, 300 So. 3d at 891.

The Louisiana Supreme Court has held that the phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious." *Guillory v. Lee*, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1127. A "vexatious refusal to pay" means one that is unjustified, without reasonable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good faith defense. *Id.* The determination as to whether an insurer's handling of a claim is arbitrary and capricious is one of fact. *Bourg*, 300 So. 3d at 891.

*Structure Claim*

In its first and second assignments of error, Imperial challenges the trial court's grant of the Harrises' motion for summary judgment and the denial of its

9

cross-motion for partial summary judgment on the structure claim.

The evidence introduced by the parties in connection with the cross-motions for summary judgments established the following facts. Mrs. Harris notified Imperial of the fire in the early morning hours of January 14, 2018, advising Imperial that it was "an intense fire." Imperial assigned Mr. Turner to adjust the claim. Mr. Turner's initial inspection of the home took place on January 18, 2018. Upon his initial inspection, Mr. Turner was aware that the damage caused by the fire was significant. The house was not habitable, as there was a hole in the roof and water damage on the bottom floor. According to Mr. Turner, it was apparent to him that the repair estimate would be large, "a lot of money," but he did not believe at that time it would reach the policy limits. He set reserves at $250,000.00 for the structure, which was his guess as to what an estimate of repair costs would be.

In his deposition, Mr. Turner testified that during this initial inspection, Mr. Harris asked for his recommendation for a contractor to "handle a large repair" like the Harrises' repair. Although Mr. Turner acknowledged his job included preparing estimates, he testified that he and Mr. Harris agreed that once Mr. Harris had chosen a contractor, Mr. Turner would meet with the contractor and schedule a joint walkthrough to "scope the damages" so the contractor could start the estimate process. Mr. Turner testified that he told Mr. Harris that he was going to rely heavily on the contractor's estimate due to his own workload. According to Mr. Turner, he was dealing with a large number of frozen pipe claims following a freeze event in Louisiana.

Mr. Turner inspected the home a second time on January 29, 2018, with the Harrises' contractor, Brian Aucoin. Mr. Aucoin advised Mr. Turner that it would take a few weeks and several meetings with his subcontractors to prepare a final estimate. Mr. Turner stated that from the damages he saw, he did not believe the home was a total loss, but acknowledged that he had not even started on an

estimate at this time, so did not know. Mr. Turner testified that when he inspected the home on January 29, 2018, he took notes of measurements, types of floors, fixtures, cabinets, "and things like that."

Ultimately, on February 12, 2018, because of the volume of claims that he was handling at the time, Mr. Turner requested permission, and was granted approval, to hire Guarantee Restoration Services, LLC, ("Guarantee") "for assistance with estimate due to workload." Guarantee assigned Shawna Pattison to prepare a structure damage estimate. Ms. Pattison forwarded the completed structure damage estimate to Mr. Turner on March 13, 2018. Ms. Pattison estimated the value of the claim to be $533,102.29, which exceeded the dwelling policy limits. On March 16, 2018, Imperial issued an initial structure payment in the amount of $423,653.22. It issued a supplemental structure payment in the amount of $600.00 on March 20, 2018, which exhausted the remainder of the policy's $426,000.00 dwelling policy limits.

In granting summary judgment in favor of the Harrises on the structure claim, the trial court found that Imperial obtained satisfactory proof of loss following Mr. Turner's January 29, 2018 inspection. The trial court concluded that Imperial committed bad faith, pursuant to the provisions of La. R.S. 22:1892, by failing to timely make some payment to the Harrises for their structure damages within 30 days of that date, and because Imperial's failure to timely make this structure payment was arbitrary, capricious, or without probable cause, the trial court awarded judgment to the Harrises and against Imperial in the amount of $212,126.61 in statutory penalties, costs in the amount of $8,386.75, and reasonable attorneys' fees in the amount of $73,504.45. The trial court further denied Imperial's cross-motion for summary judgment on the structure claim.

On appeal, Imperial argues that the trial court erred by denying its motion for partial summary judgment on the structure claim. Imperial contends that it

11

received satisfactory proof of loss on March 13, 2018, when Guarantee submitted its appraisal, not on January 29, 2018, as the trial court concluded, and therefore the structure payment was timely. Imperial also argues that the trial court erred in granting partial summary judgment in favor of the Harrises on the structure claim because genuine issues of material fact exist with regard to when Imperial received satisfactory proof of loss of the structure damage. Imperial further contends that even if there were sufficient facts to determine that it had satisfactory proof of loss on January 29, 2018, material facts exist from which reasonable jurors could conclude that the timing of the structure payment was not arbitrary, capricious, or without probable cause.

In contrast, the Harrises contend that the trial court correctly relied on the undisputed evidence and concluded that satisfactory proof of loss occurred on January 29, 2018, when Mr. Turner inspected the home for the second time. According to the Harrises, Mr. Turner's second inspection provided him with every opportunity to obtain all information necessary to fully adjust the structure claim and estimate the damage. Among other cases, the Harrises cite this court's opinion in *Paul v. National American Insurance Co.*, 361 So. 2d 1281 (La. App. 1 Cir.), writ denied, 363 So. 2d 1385 (La. 1978), in support of their contention that a personal inspection of an insured's property by an adjustor for the insurance company can constitute satisfactory proof of loss.

Following our *de novo* review of the record, we find that neither party established a right to judgment as a matter of law. As the trial court correctly noted in its reasons for judgment, this issue involves the question of when satisfactory proof of loss was obtained. As noted above, whether and when an insurer received satisfactory proof of loss sufficient to trigger the payment periods contained in La. R.S. 22:1892 is a question of fact. See *Richardson*, 48 So. 3d at 314. We find that genuine issues of material fact remain as to whether Mr. Turner's second

12

inspection of the home on January 29, 2018 provided him with adequate knowledge of the loss. According to his testimony, he took measurements and noted types of floors, fixtures, cabinets, and the like, in the home during that inspection. However, while he acknowledged that he had not yet begun to prepare an estimate of the damage as of January 29, 2018, he testified that he had previously advised Mr. Harris that he would rely heavily on the estimate from the Harrises' contractor. Mr. Turner did not meet with Mr. Aucoin until January 29, 2018, at which time Mr. Aucoin indicated that it would take a "few weeks" for him to finalize his estimate. Thereafter, on February 12, 2018, when Mr. Turner had not received Mr. Aucoin's estimate, he hired Guarantee to assist him with the estimate.

Based upon the above, we find that in this case, the factual determination as to when Imperial received satisfactory proof of loss is not proper for summary judgment. See *Kennett v. Department of Public Works ex rel. City of Bogalusa*, 2013-0824 (La. App. 1 Cir. 12/27/13), 2013 WL 6858283 at *10. Moreover, to the extent that the Harrises rely on *Paul*, 361 So. 2d 1281, we note that the procedural posture of *Paul* is distinguishable in that the factual finding that the insurer in that case was fully apprised of the claim through its adjuster's personal investigation of the premises was rendered after a trial on the merits, not on a motion for summary judgment. Accord *Kennett*, 2013 WL 6858283 at *10 (noting the distinction between factual findings made after a trial, as opposed to those made in a summary judgment setting.)

Thus, we find the trial court erred in granting summary judgment in favor of the Harrises and reverse this part of the judgment. For these same reasons, we find Imperial is not entitled to summary judgment on its cross-motion, and we affirm this part of the judgment. We will remand this matter for further proceedings regarding the Harrises' bad faith damages claim for Imperial's alleged untimely

13

payment of their structure claim.

### *First Contents Claim*

In its third assignment of error, Imperial challenges the trial court's grant of the Harrises' motion for summary judgment on the first contents claim.

The evidence introduced by the parties concerning this claim established that on March 20, 2018, the Harrises submitted a partial contents list using the form provided by Imperial. The list provided a general description of each item, as well as its approximate age and value. Mr. Turner acknowledged that on March 20, 2018, he received the Harrises' partial personal property inventory loss list on the form that Imperial provided to them, and the Harrises provided all the information that was required for the items. Mr. Turner sent the list to a third-party vendor to obtain pricing that accounted for depreciation. On April 24, 2018, Mr. Turner received the depreciated pricing report and submitted it to management for payment. Thereafter, on May 29, 2018, Imperial issued payment to the Harrises on the partial contents claim in the amount of $174,829.75.

The trial court granted summary judgment in favor of the Harrises on this claim, finding that satisfactory proof of loss for the items occurred no later than March 20, 2018. The trial court further found that Imperial committed bad faith by failing to timely make payment to the Harrises for their first contents submission within 30 days of that date. Finding Imperial's failure to timely make this first contents payment was arbitrary, capricious, or without probable cause, the trial court awarded judgment to the Harrises and against Imperial in the amount of $87,414.88 in statutory penalties and reasonable attorneys' fees in the amount of $29,138.29.

On appeal, Imperial contends that it received the depreciated pricing report on April 24, 2018, and acknowledges that it did not issue payment of the claim until May 29, 2018, more than 30 days later. Imperial asserts that there are no facts

14

that support arbitrary or vexatious behavior on its part in connection with the delay; and at a bare minimum, there is a genuine issue of material fact as to whether its adjustment of the first contents claim was arbitrary and vexatious, precluding summary judgment. In support of this assertion, Imperial relies upon the affidavit of Denise Calzadiaz, an analyst that handles large loss homeowner's claims for Imperial. According to Ms. Calzadiaz, Mr. Turner's manager, Mike Reyna, submitted the Harrises' contents claim on April 24, 2018, via the Homeowner Large Loss Authority Request email address. Ms. Calzadiaz reviewed the request on May 3, 2018, and sent an email to Mr. Reyna requesting clarification due to a formatting issue and because the Large Loss submission did not include previously issued payments. Ms. Calzadiaz reconciled the discrepancy arising from the previously issued payments on May 17, 2018, and on May 18, 2018, she forwarded the Large Loss request to Vice-President of Homeowner Claims, Scott Morrison, for final review and approval. Mr. Morrison reviewed and approved the request on May 25, 2018. Ms. Calzadiaz attested that at the time the request for payment of the Harrises' contents claim was submitted, catastrophic wildfires in California resulted in an extremely high volume of large loss claims, which, in turn, created an unusually heavy workload for her. According to Ms. Calzadiaz, she handled the Harrises' first contents claim as accurately and efficiently as possible under the circumstances prevailing at the time.

The Harrises argue that caselaw in Louisiana is clear that Imperial's excuse that a heavy workload resulted in payment of their contents claim 42 days after it was due is precisely the type of behavior that satisfies the definition of "arbitrary, capricious and without probable cause," citing *Pelas v. American Emp. Ins. Co.*, 299 So. 2d 815 (La. App. 4 Cir.), writ denied, 302 So.2d 310 (La. 1974). In *Pelas*, the Louisiana Fourth Circuit Court of Appeal affirmed a trial court's finding that an insurer was arbitrary and capricious in not paying a claim, based in part upon the

adjuster's testimony that he was very busy with claims from Hurricane Camille. *Id.* at 817.

The trial court found that Imperial received satisfactory proof of loss on March 20, 2018, while Imperial contends that it received satisfactory proof of loss on April 24, 2018, when it received the depreciated pricing report. Even accepting April 24, 2018, as the date Imperial received satisfactory proof of loss, Imperial did not issue payment of the first contents claim until May 29, 2018. We do not agree with Imperial's assertion that the combined effect of an unusually high number of homeowner's claims, in both Louisiana and California, excuses its failure to pay the Harrises' claim within the 30-day statutory period. Rather, we find the unwarranted delay by Imperial in timely paying the first contents claim satisfies the definition of "arbitrary, capricious and without probable cause." See *Pelas*, 299 So. 2d at 817. The Harrises are entitled to summary judgment regarding this claim. Thus, the trial court correctly granted the Harrises' motion for summary judgment on the first contents claim.

### Second Contents Claim

In their first and second assignments of error in their answer to the appeal, the Harrises contend that the trial court erred in denying their motion for summary judgment and granting Imperial's cross-motion for partial summary judgment on the second contents claim.

The evidence introduced in connection with this claim indicated that the Harrises submitted a supplemental and final contents list to Imperial on May 9, 2018. At that time, Mr. Turner was aware that this submission would cause the Harrises' contents claim to exceed the policy limits. Nevertheless, on May 23, 2018, he submitted the supplemental list to a third-party vendor to obtain pricing that accounted for depreciation. On June 5, 2018, Mr. Turner received the depreciated pricing report. On June 7, 2018, Imperial issued and mailed a second

16

contents payment in the amount of $33,470.25, the remainder of the policy limits. The Harrises received the payment on June 11, 2018.

The trial court granted summary judgment in favor of Imperial on the second contents payment. The trial court found that satisfactory proof of loss occurred on May 9, 2018. The trial court further found that the "mailbox rule" was applicable. Finding Imperial issued and mailed the payment on June 7, 2018, within the 30-day requirement, the trial court concluded the second contents payment was made timely and Imperial was entitled to judgment as a matter of law. The trial court dismissed all of the Harrises' claims with respect to the second contents payment, with prejudice.

In *Schexnaildre v. State Farm Mutual Automobile Insurance Company*, 2015-0272 (La. App. 1 Cir. 11/9/15), 184 So. 3d 108, 115, this court found that an insurer's placement of a check in the mail, with sufficient postage and properly addressed, constituted "payment" for purposes of La. R.S. 22:1892 A(1) and B(1). The *Schexnaildre* court reasoned that the mailing date is under the control of the responsible insurer and, therefore, provides a predictable termination point to the claim-review process. *Id.* Therefore, mailing a check on the 30th day was timely payment. *Id.*

On appeal, the Harrises do not deny that Imperial mailed the second contents payment within 30 days of receiving satisfactory proof of loss. Rather, they argue that *Schexnaildre* is distinguishable because it involved an in-state payment, and it was reasonable to expect the delivery of that check within a couple of days. The Harrises argue that in this case, Imperial placed the check in the mail on the 29th day from out of state, and should not have expected its delivery to occur within a couple of days.

We do not agree that *Schexnaildre* is limited to the mailing of in-state payments. To the contrary, the reasoning for the "mailbox rule" is to create a

uniform 30-day period for an insurer to consider a claim before payment is required. Thus, again applying a strict construction of La. R.S. 22:1892, we conclude the trial court properly applied the mailbox rule in this case. See *Schexnaildre*, 184 So.3d at 112, 115.

The evidence in this case established that Imperial mailed the second contents payment on June 7, 2018, less than 30 days after its receipt of satisfactory proof of loss on May 9, 2018. Imperial is entitled to summary judgment dismissing the Harrises' claim regarding this payment. Thus, the trial court correctly denied the Harrises' motion for summary judgment and granted Imperial's cross-motion for partial summary judgment on the second contents claim.

### *Increased Replacement Cost Coverage Claim*

In their third and fourth assignments of error in their answer to the appeal, the Harrises contend that the trial court erred in denying their motion for summary judgment and granting Imperial's cross-motion for partial summary judgment on the IRCC endorsement payment claim.

The IRCC endorsement to the Harrises' policy provided additional structure coverage for their home equal to 20% of the policy limits ($85,320.00). The terms of the endorsement provided:

> For an additional premium, and if you have notified us within 90 days of the start of any alterations to the insured building(s) which increase the replacement cost of the building(s) by $10,000 or more, or there have been no such alterations:
>
> your Homeowners policy is changed as follows:
>
> > We will increase the Coverage A (Dwelling) limit of liability by 20% of the stated limit of liability indicated in the Declarations Page.
>
> **SECTION 1 – CONDITIONS**
> Under **3. Loss Settlement**, item b., (1). is deleted and replaced by the following:

18

(1) If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the repair or replacement cost of the damaged building structure(s), after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The Coverage A (Dwelling) limit of liability shown on the Declaration page increased by 20% with respect to buildings.
(b) The replacement cost of that part of the building structure(s) damaged for like kind and quality on the same premises.
(c) The amount actually and necessarily spent to repair or replace the damaged building.

The evidence introduced in connection with this claim established that on October 30, 2018, counsel for the Harrises sent a letter to Imperial's counsel demanding payment according to the terms of the IRCC endorsement. In that letter, counsel for the Harrises advised that by e-mail dated October 10, 2018, he provided notice to Imperial's counsel that the Harrises had begun the process of rebuilding/replacing their home. In addition, he provided a copy of a builder's contract with Meridian Homes, LLC, dated September 5, 2018, that reflected a base cost of $529,461.00 to rebuild the Harrises' home. He further advised that the Harrises had paid additional costs in the amount of $36,097.50 for plans and demolition expenses, making the total cost to rebuild the Harrises' home $565,558.50. On November 5, 2018, Imperial issued a check to the Harrises in the amount of $85,320.00 (20% of the $426,600.00 dwelling limit).

The trial court ruled in favor of Imperial, granting its cross-motion for summary judgment with respect to the IRCC payment, and dismissing the Harrises' claims with respect thereto. The trial court found that the language of the IRCC endorsement required that "the insured provide timely notice that the work has actually been undertaken, and the amount owed is determined on an incurred basis once the insured provides proof of exactly how much was spent to complete the

19

work." The trial court concluded that since construction of the Harrises' home was still ongoing, there was no way to determine exactly what amount was incurred to rebuild the home, and thus the IRCC payment was not yet due when it was timely made by Imperial.

The Harrises argue that Imperial knew on March 13, 2018, when it received the structure estimate from the third-party vendor, that the cost to repair or replace their home would exceed the structure policy limits by more than $100,000.00, but Imperial failed to make any payments under the IRCC endorsement until November 2, 2018. The Harrises further argue that because Imperial paid the full limits of the endorsement but refused to provide the reason for the late payment, it is estopped from arguing the endorsement payment was not owed and cannot provide a reason for the delay in payment. In support of their estoppel argument, the Harrises cite *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1216, wherein the Louisiana Supreme Court held that an insurer waived its right to assert a coverage defense by assuming and continuing the defense of its insured in the face of facts indicating that it had a right to deny coverage for the accident. The Louisiana Supreme Court noted that in the insurance context, waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured that could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. *Id.*

Imperial cites to a more recent Louisiana Supreme Court case, *Forvendel v. State Farm Mutual Automobile Insurance Company*, 2017-2074 (La. 6/27/18), 251 So. 3d 362, 365-67 (per curiam), wherein the Louisiana Supreme Court declined to extend application of the waiver rule articulated in *Steptore* to an insured's subsequent claim. In *Forvendel*, an insured sought to rely on the insurer's actions, which occurred in connection with a prior 2007 claim, to find a waiver occurred in

the context of the current 2013 claim. The Louisiana Supreme Court held that any purported waiver by the insurer of its defenses with regard to the 2007 claim could not constitute a waiver with regard to the 2013 claim, as it would result in the absurd conclusion that the insurer would forever be precluded from raising an anti-stacking defense in any future claim filed by the insured. *Id.* at 366-67. In so holding, the Louisiana Supreme Court cited with approval the reasoning set forth in the United States Fifth Circuit Court of Appeals' opinion in *American International Specialty Lines Ins. Co. v. Canal Indemnity Co.*, 352 F.3d 254, 271 (5 Cir. 2003):

> We also find that Louisiana's Code articles governing the "payment of a thing not owed" compel our conclusion that, contrary to Canal's argument, **an insurer does not, by virtue of making a payment on a claim, waive the right to assert coverage defenses to a subsequent claim.** See LA. CIV. CODE ANN. arts. 2299-2305 (2003). Indeed, Louisiana's intermediate appellate courts have relied on these articles in holding that an insurer's erroneous, or even negligent, payment of a claim to its insured does not bar the insurer from later recouping the amount paid .... Moreover, under Louisiana Civil Code article 2299, ... even "a person who knowingly has paid a thing not owed may reclaim" the amount paid from the recipient. LA. CIV.CODE. ANN. art. 2299 cmt. (d) (2003) .... **In sum, we decline to extend application of the waiver rule articulated in *Steptore* to the relationship among insurers particularly when, under the facts presented, such application would contravene the Louisiana Civil Code and this Circuit's precedent.** (Internal citations and footnotes omitted; emphasis added.)

*Forvendel,* 251 So. 3d at 366.

Thus, Imperial argues that the Harrises' waiver argument is without merit because: (1) there is no tripartite relationship to be concerned about in this case; (2) Imperial has not denied or withheld any payment based on a coverage defense; and (3) under Louisiana law, Imperial would not be estopped from seeking to reclaim the IRCC payment if it chose to do so.

We find *Steptore* factually distinguishable. In this case, Imperial is not seeking to deny coverage under the IRCC endorsement. Rather, it introduced evidence of the terms of its insurance contract to establish that it is entitled to

21

summary judgment on the Harrises' bad faith claim. We do not find that Imperial waived its right to defend itself from this claim by paying the Harrises' IRCC endorsement claim.

We further find that the terms of the IRCC endorsement require that the homeowner timely notify Imperial within 90 days from the start of any reconstruction. The policy further requires that the insurer have knowledge of the amount actually spent to repair or replace the damaged building. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Kirby v. Ashford*, 2015-1852 (La. App. 1 Cir. 12/22/16), 208 So. 3d 932, 937. Louisiana Revised Statutes 22:1892(A)(1) requires an insurer to pay the amount of any claim **due** its insured within 30 days after receipt of satisfactory proofs of loss. Under the clear terms of the IRCC endorsement, payment was not due until the Harrises notified Imperial of the start of any reconstruction, and Imperial had knowledge of the amount actually spent to repair or replace the Harrises' home. The Harrises notified Imperial on October 10, 2018, that they had begun the process of rebuilding their home. Imperial was not provided with the amount actually spent on repairs, but sent payment on November 5, 2018. Thus, under the clear terms of the IRCC endorsement, payment was not due at the time Imperial sent it, and thus Imperial is entitled to summary judgment dismissing the Harrises' claim regarding this payment.

Accordingly, the trial court correctly denied the Harrises' motion for summary judgment and granted Imperial's cross-motion for partial summary judgment on the IRCC claim.

## CONCLUSION

For the foregoing reasons, we deny Imperial Fire and Casualty Insurance Company's writ application, dismiss William and Amanda Harrises' motion to

dismiss/deny the writ as moot, affirm the September 9, 2020 judgment in part with regard to the Harrises' first and second contents claims and Increased Replacement Cost Coverage claims, reverse the judgment in part with regard to the Harrises' structure claim, and remand to the trial court for further proceedings. Costs of this appeal are assessed one-half to William and Amanda Harris and one-half to Imperial Fire and Casualty Insurance Company.

**WRIT DENIED; MOTION TO DISMISS DENIED AS MOOT; SEPTEMBER 9, 2020 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

| WILLIAM and AMANDA HARRIS | STATE OF LOUISIANA |
|---|---|
| | COURT OF APPEAL |
| VERSUS | |
| IMPERIAL FIRE AND CASAULTY INSURANCE | FIRST CIRCUIT |
| | NO. 2020 CA 1323; 2020 CW 0869 |

**HOLDRIDGE, J., CONCURS.**

I respectfully concur in the result. I write separately to urge the legislature to re-examine La. R.S. 22:1892 and all of the penalty provisions involving insurance contracts. The provisions are confusing at best and have been used as a negotiating weapon in the practice of law. While the majority opinion correctly wades through the legal quagmire of applying the penalty provision in this case, the multiple legal questions and issues raised herein illustrates the inefficiency and inadequacy of the insurance penalty provisions in our laws. Penalty provisions should be clear, certain, and fair allowing the parties to determine the applicable penalty, if any, without the necessity of endless litigation and interpretation by the courts.